# EXHIBIT B

**THIS PLAN TERM SHEET (THE "PLAN TERM SHEET") IS FOR DISCUSSION PURPOSES ONLY AND IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS WITH RESPECT TO A CHAPTER 11 PLAN OF REORGANIZATION. IT DOES NOT CONTAIN ALL OF THE TERMS OF A PROPOSED PLAN OF REORGANIZATION. THIS TERM SHEET SHALL NOT BE CONSTRUED AS (I) AN OFFER CAPABLE OF ACCEPTANCE, (II) A BINDING AGREEMENT OF ANY KIND, (III) A COMMITMENT TO ENTER INTO, OR OFFER TO ENTER INTO, ANY AGREEMENT OR (IV) AN AGREEMENT TO FILE ANY CHAPTER 11 PLAN OF REORGANIZATION OR DISCLOSURE STATEMENT OR CONSUMMATE ANY TRANSACTION OR TO VOTE FOR OR OTHERWISE SUPPORT ANY PLAN OF REORGANIZATION. THIS TERM SHEET IS A SETTLEMENT COMMUNICATION AND DOES NOT REFLECT THE VIEWS OF ANY PARTY AS TO THE VALUATION OF THE DEBTORS.**

| |
|---|
| **ESCALERA RESOURCES CO.**<br>Plan Term Sheet |

This Plan Term Sheet sets forth the principal terms of a proposed "pre-packaged" chapter 11 plan (such plan, together with any exhibits, schedules, attachments or appendices thereto, in each case as may be amended, supplemented or otherwise modified from time to time, the Pre-Packaged Chapter 11 Plan (defined below)) of Escalera Resources Co. ("**Escalera**" or "**Debtor**") and a consistent agreement with Eastern Washakie Midstream LLC ("**Eastern Washakie**") and PetroSearch Energy Corporation ("**PetroSearch**" and together with Eastern Washakie, the "**Guarantors**"). Escalera is filing a chapter 11 case in the United States Bankruptcy Court for the District of Colorado (the "**Bankruptcy Court**"). This Plan Term Sheet is not a complete list of all the terms and conditions of the restructuring transaction contemplated herein, and shall not constitute an offer to sell or buy, nor the solicitation of an offer to sell or buy any of the securities referred to herein or the solicitation of acceptances of a chapter 11 plan. Any such offer or solicitation shall only be made in compliance with all applicable laws. Without limiting the generality of the foregoing, this Plan Term Sheet and the undertakings contemplated herein are subject in all respects to the negotiation, execution and delivery of mutually acceptable definitive documentation consistent herewith. In the event of an inconsistency between this Plan Term Sheet and the definitive documentation, the provisions of such definitive documentation shall govern. This Plan Term Sheet is proffered in the nature of a settlement proposal in furtherance of settlement discussions and is entitled to protection from any use or disclosure to any party or person pursuant to Federal Rule of Evidence 408 and other rules of similar import.

*THIS PLAN TERM SHEET IS BEING PROVIDED AS PART OF A PROPOSED COMPREHENSIVE RESTRUCTURING TRANSACTION, EACH ELEMENT OF WHICH IS CONSIDERATION FOR THE OTHER ELEMENTS AND AN INTEGRAL ASPECT OF THE PROPOSED RESTRUCTURING. THE STATEMENTS CONTAINED HEREIN ARE PROTECTED BY FRE 408, AND NOTHING IN THIS TERM SHEET SHALL CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, A STIPULATION OR A WAIVER, AND EACH STATEMENT CONTAINED HEREIN IS MADE WITHOUT PREJUDICE, WITH A FULL RESERVATION OF ALL RIGHTS, REMEDIES, CLAIMS AND DEFENSES OF THE ISSUERS, GUARANTORS, AND ANY CREDITOR PARTY.*

| **TERMS AND CONDITIONS OF THE PLAN** |
|---|
| **A.    Defined Terms and Capital Structure** |

| | |
|---|---|
| **The Filing Entities and Restructuring** | Escalera will file for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") with the Bankruptcy Court (such filing, the "**Chapter 11 Case**"). The date on which the Chapter 11 Case is commenced shall be the "**Petition Date**." <br><br> Certain outstanding indebtedness of the Company shall be restructured (the "**Restructuring**") through a joint "pre-packaged" chapter 11 plan of reorganization, on the terms and subject to the conditions set forth in this Plan Term Sheet (the "**Pre-Packaged Chapter 11 Plan**"). <br><br> Washakie and Petrosearch may determine to file for relief under chapter 11 of title 11 of the Bankruptcy Code with the Bankruptcy Court during Escalera's Chapter 11 Case, in which circumstance their respective cases may be jointly administered with the Chapter 11 case and a joint plan filed. To the extent either or both of Washakie and Petrosearch do not file chapter 11 cases, a condition precedent to the Pre-Packaged Chapter 11 Plan becoming effective will be a consensual workout with the Lenders on terms consistent with the terms of the Pre-Packaged Chapter 11 Plan. After the Effective Date (as defined below), Escalera, Eastern Washakie, and PetroSearch shall be referred to herein collectively as the "**Reorganized Debtors**." |
| **Plan Filing** | The Pre-Packaged Chapter 11 Plan shall be filed by the Debtor within two weeks of the Petition Date. The Debtor shall use all commercially reasonable efforts to seek confirmation of the Pre-Packaged Chapter 11 Plan as promptly as is practicable. |
| **Current Capital Structure** | The current capital structure of the Debtors is as follows: <br><br> (a) Indebtedness consisting of (i) the promissory note ("**Senior Secured Note**") dated August 29, 2014, issued pursuant to that certain Credit Agreement ("**Senior Credit Facility**"), dated August 29, 2014 among Escalera, as borrower, the various financial institutions that are or may become a party thereto (the "**Lenders**"), Société Générale as Administrative Agent and as letter of credit issuer, and SG Americas Securities, LLC, as Sole Lead Arranger; and (ii) the related guarantees of the Guarantors. As of September 30, 2015, the aggregate outstanding principal amount of the Promissory Note was approximately $36.9 million; <br><br> (b) Existing equity interests of Escalera including (i) 1,610,000 shares of 9.25% Series A Cumulative Preferred Stock (the "**Preferred Equity**"), and (ii) |

2

| | |
|---|---|
| | about 14,300,000 shares of common stock ("**Common Equity**"). |
| **New Common Equity** | On the Effective Date, Reorganized Escalera shall issue new common stock (the "**New Common Equity**"), par value $0.01 per share. 49% of the New Common Equity shall be available to holders of general unsecured claims pursuant to the New Common Equity Distribution, as described below, and the other 51% of New Common Equity shall be retained by Reorganized Escalera for distribution pursuant to a post-Effective Date "**Management Incentive Program**." On the Effective Date, Reorganized Escalera will become a private company. |
| **Effective Date** | The "**Effective Date**," if any, of the Pre-Packaged Chapter 11 Plan in the Chapter 11 Cases shall be the date on which all the conditions to consummation of the Pre-Packaged Chapter 11 Plan have been satisfied in full or waived, and the Pre-Packaged Chapter 11 Plan becomes effective. On the Effective Date, all Debtors shall be reorganized pursuant to the Pre-Packaged Chapter 11 Plan in accordance with and pursuant to the Bankruptcy Code. |
| **B.   Treatment of Claims and Interests** | |
| **Administrative Claims** | Except with respect to priority tax claims, and except to the extent that a holder of an allowed administrative expense claim (including a claim arising under section 503(b)(9) of the Bankruptcy Code that has not been paid pursuant to a motion filed with the Bankruptcy Code) and the Debtors agree to a less favorable treatment, each holder of an allowed administrative expense claim shall be paid in full in cash on the later of the initial distribution date under the Pre-Packaged Chapter 11 Plan or the date such administrative expense claim is allowed, and the date such allowed administrative claim becomes due and payable, or as soon thereafter as is practicable; provided, however, that allowed administrative expense claims that arise in the ordinary course of the Debtors' business, including administrative claims arising from or with respect to the sale of goods or services on or after the Petition Date, the Debtors' executory contracts and unexpired leases shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions, without further action by the holders of such administrative claims or further approval by the Bankruptcy Court. |
| **Priority Tax Claims** | On or as soon as practicable after the Effective Date, each holder of an allowed unsecured priority tax claim shall be |

3

| | |
|---|---|
| | treated in accordance with Bankruptcy Code section 1129(a)(9)(C). Allowed unsecured priority tax claims may be paid during the Chapter 11 Case with the consent of the Lenders and upon Court approval, or upon the Effective Date. |
| **Priority Non-Tax Claims** | On or as soon as practicable after the Effective Date, each holder of an allowed priority non-tax claim shall receive cash equal to the full allowed amount of its claim or otherwise be left unimpaired, or receive such lesser treatment as may otherwise be agreed to by such holder and the Debtors. |
| **Senior Secured M&M Claims** | To the extent that any mineral lien claimants hold secured mechanics and materialmen claims (the "**Senior Secured M&M Claims**") that are found to be senior in priority to the Senior Secured Note, then, on or as soon as practicable after the Effective Date, all such Senior Secured M&M claims allowed as of the Effective Date, if not paid previously, shall, at the option of the Debtors, either (i) be satisfied by payment in full in cash, (ii) be reinstated pursuant to section 1124 of the Bankruptcy Code, or (iii) receive such other recovery necessary to satisfy section 1129 of the Bankruptcy Code. |
| **Senior Credit Facility Claims** | Each holder of a claim under the Senior Credit Facility shall receive:<br><br>(i) its *pro rata* share of a 100% of a new first lien secured note ("**New Senior Secured Note**") in the principal amount of $15 million[1] with interest at L+300 bps and a maturity date of 3rd anniversary of Effective Date, with such other terms as are satisfactory to Escalera and the Lenders, including a covenant against senior or *pari passu* secured debt without the Lenders' consent; and<br><br>(ii) its *pro rata* share of a $21.9 million second lien deficiency claim (the "**Deficiency Claim**"), which Deficiency Claim will share in the PIK Note (defined below) distribution provided for general unsecured claimants, but Lender will elect not to share in the GUC Cash Distribution (defined below) or the New Common Equity |

---

[1] The principal amount of the New Senior Secured Note may be increased by up to $2 million to the extent that the Debtors and Lenders agree that additional corporate liquidity is necessary in the form of a new money exit facility.

|  | Distribution (defined below). |
|---|---|
| **General Unsecured Claims** | Each holder of a general unsecured claim shall receive, at its election, either (i) its *pro rata* share of 100% of a new second lien note (the "**PIK Note**") in the principal amount of $21.9 million plus amount of opt-in general unsecured claims, with interest at L+600 bps and payable in kind until either the maturity of such PIK Note, with a maturity date of 3rd Anniversary of Effective Date, or a sale of the company or substantially all assets, and with such other terms as are satisfactory to Escalera and the Lenders, including a covenant against senior (except the New Senior Secured Note) or *pari passu* secured debtor without the Lenders' consent (with the *pro rata share* determined by using the aforesaid principal amount of the PIK Note as the denominator and the allowed claim amount as the numerator); (ii) its *pro rata* share, of $40,000 in cash (the "**GUC Cash Distribution**"), not to exceed the amount of its claim, payable on the Effective Date, or as soon thereafter as practicable (with the *pro rata share* determined by using the aggregate amount of all allowed general unsecured claims excluding any claim of the Lenders as the denominator and the allowed claim amount of the electing creditor as the numerator); or (iii) its *pro rata* share of 49% of New Common Equity (with the *pro rata share* determined by using the aggregate amount of all allowed general unsecured claims excluding any claim of the Lenders as the denominator and the allowed claim amount of the electing creditor as the numerator) (the "**New Common Equity Distribution**"). No fractional shares of New Common Equity will be issued pursuant to the New Common Equity Distribution, and any portion of the New Common Equity Distribution not to be distributed shall not be issued. In lieu of fractional shares, holders shall choose between the PIK Note and GUC Cash Distribution.<br><br>For purpose of the foregoing election, a creditor make elect to take 50% of its allowed claim pursuant to one option and 50% pursuant to a second option.<br><br>Convenience Class: notwithstanding the above, allowed general unsecured claims of less than $1000 shall be paid 50% of their allowed general unsecured claims in cash on the Effective Date. No creditor will be permitted to "opt-in" to this treatment by voluntarily reducing its claim. |
| **Preferred Equity** | Existing Preferred Equity shall be cancelled and extinguished, and holders of Preferred Equity shall not receive or retain any property or assets on account of their interests. |

5

| | |
|---|---|
| **Common Equity** | Existing Common Equity shall be cancelled and extinguished, and holders of Common Equity shall not receive or retain any property or assets on account of their interests. |
| **C. Other Provisions** | |
| **Cash Collateral/DIP Order** | Any motion or proposed interim or final orders relating to the use of cash collateral or for approval of DIP financing to be mutually agreeable to Lenders and Debtors. |
| **Releases and Exculpation** | The Pre-Packaged Chapter 11 Plan shall include, to the fullest extent permitted by applicable law, a full release from liability in favor of the Debtor, the Lenders, Société Générale in all capacities, SG Americas Securities, LLC, in all capacities, and all their respective current and former direct and indirect equityholders, members, partners, subsidiaries, affiliates, funds, managers, managing members, officers, directors, employees, advisors, principals, attorneys, professionals, accountants, investment bankers, consultants, agents, and other representatives (including their respective equityholders, members, partners, subsidiaries, affiliates, funds, managers, managing members, officers, directors, employees, advisors, principals, attorneys, professionals, accountants, investment bankers, consultants, agents, and other representatives) for any act or omission in connection with, related to, or arising out of, the Restructuring, the Chapter 11 Cases, the pursuit of confirmation of the Pre-Packaged Chapter 11 Plan, the consummation of the Pre-Packaged Chapter 11 Plan or the administration of the Chapter 11 Cases or the property to be distributed under the Pre-Packaged Chapter 11 Plan, except for claims resulting from fraud, gross negligence or willful misconduct as determined by a final order of the Bankruptcy Court. |
| **Conditions Precedent to Confirmation of the Plan** | Confirmation of the Pre-Packaged Chapter 11 Plan is subject to:<br><br>(i) The Bankruptcy Court having entered an order in form and substance reasonably acceptable to the Debtors and the Lenders, approving a disclosure statement related to the Pre-Packaged Chapter 11 Plan which is in form and substance reasonably acceptable to the Debtors and Lenders (the "**Disclosure Statement**").<br><br>(ii) The Pre-Packaged Chapter 11 Plan and all documents contained in any supplement thereto, including any exhibits, schedules, amendments, modifications or supplements thereto, having been filed in form and substance reasonably acceptable to the Debtors and the |

6

#5027209.2
#5045862.1

| | |
|---|---|
| | Lenders, and otherwise consistent with the terms and conditions described in this Plan Term Sheet.<br><br>(iii)  The order confirming the Pre-Packaged Chapter 11 Plan (the "**Confirmation Order**") shall be acceptable to the Debtors and the Lenders, and otherwise consistent with the terms and conditions described in this Plan Term Sheet. |
| **Conditions Precedent to Consummation of the Plan** | The Pre-Packaged Chapter 11 Plan shall contain customary conditions to effectiveness in form and substance to be agreed upon, including, without limitation:<br><br>(i)  The Confirmation Order shall have become a final order that is not stayed. |
| **Other Provisions** | Other provisions set forth in the Pre-Packaged Chapter 11 Plan and any related disclosure statement shall be reasonably acceptable to each of the Lenders and the Debtors, to the extent set forth therein; provided that no provision in the Pre-Packaged Chapter 11 Plan or any related disclosure statement may be materially inconsistent with the terms in this Plan Term Sheet. |

7