## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 15-22395-TBM |
| ESCALERA RESOURCES CO., | ) | |
| a Maryland corporation, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| THE OFFICIAL COMMITTEE OF | ) | |
| UNSECURED CREDITORS OF ESCALERA | ) | Adv. Proc. No. 16-_____ TBM |
| RESOURCES CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SOCIETE GENERALE, MUTUAL OF | ) | |
| OMAHA BANK SOCIETE GENERALE, AND | ) | |
| SOCIETE GENERALE FINANCIAL | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## THE OFFICIAL UNSECURED CREDITORS COMMITTEE'S ADVERSARY COMPLAINT FOR AVOIDANCE OF UNPERFECTED LIENS AND DECLARATORY JUDGMENT

The Official Unsecured Creditors Committee of Escalera Resources Co. (the "Debtor"), on behalf of the Debtor's bankruptcy estate, alleges as follows:

### PRELIMINARY STATEMENT

1.     Defendants Société Générale. Mutual of Omaha Bank Société Générale, and Société Générale Financial Corporation (collectively the "Defendants") are lenders of the Debtors asserting first-priority liens in the Debtors' assets, including certain oil and gas leases of the Debtor.  Defendants' purported liens fail to attach and/or are not properly perfected with

respect to: (i) certain oil and gas leases; (ii) commercial tort claims of the Debtors, including claims against the Debtors' directors and officers; (iii) vehicles; (iv) pipeline interests; and (v) and the proceeds of the foregoing, including revenue generated from the leases. Accordingly, the Defendants have no liens on these assets or their proceeds. In the alternative, the Defendants have only unperfected liens on this property, which the Committee may avoid and preserve for the benefit of the Debtor's estate under 11 U.S.C. §§544(a), 551.

## PARTIES, JURISDICTION AND VENUE

2.      The United States Trustee appointed the Plaintiff as the Official Unsecured Creditors Committee (the "Committee") of the Debtor on November 13, 2015. The Committee consists of four unsecured creditors, Clark Huffman, Griffin Partners 675, Seidel Technologies, LLC, and Richard Dole.

3.      Defendant, Société Générale, is, and at all material times was, a French bank with its principal place of business in Houston, Texas. This Defendant has participated in the above-captioned bankruptcy case and voluntarily submitted itself to the jurisdiction of this Court for all purposes related to this adversary proceeding.

4.      Defendant, Mutual of Omaha Bank Société Générale, is, and at all material times was, represented by its agent, Société Générale. This Defendant has participated in the above-captioned bankruptcy case and voluntarily submitted itself to the jurisdiction of this Court for all purposes related to this adversary proceeding.

5.      Defendant, Société Générale Financial Corporation, is, and at all material times was, represented by its agent, Société Générale. This Defendant has participated in the above-

captioned bankruptcy case and voluntarily submitted itself to the jurisdiction of this Court for all purposes related to this adversary proceeding.

6.      This action is brought pursuant to Rule 7001 et seq. of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. § 2201(a) to seek relief in accordance with 11 U.S.C. §§105, 502, 544, 551 and 1107 and other applicable law.

7.      This adversary proceeding arises out of and relates to the above-captioned Chapter 11 case.

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter constitutes a "core" proceeding within the meaning of 28 U.S.C. §§ 157(b)(l) and 157(b)(2)(A), (B) and (K). The Court has authority to enter final orders in this adversary proceeding and the Plaintiff agrees to entry of final orders by the Bankruptcy Court.

9.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1409(a), as this adversary proceeding arises in or relates to a case under Title 11 of the United States Code, which is pending in this district.

## GENERAL BACKGROUND

10.     The Debtor filed its Voluntary Petition on November 5, 2015 ("Petition Date").

11.     The Debtor listed on its Bankruptcy Schedule A the following:

   a.   "Eastern Washakie Midstream LLC easements and rights of way for pipeline (title held by Debtor for Eastern Washakie Midstream LLC, see Schedule Supplement A1, attached hereto)" with an unknown value and $0 secured claim.

   b.   "Mineral (oil & gas) interests and royalty interests owned by Debtor are listed on Schedule Supplement A2, attached hereto. Fractional interest" with an unknown value and $36,886,000.00 secured claim.

3

12.     The Debtor listed on its Bankruptcy Schedule B a number of items of personal property, including:

| Asset | Value |
|---|---|
| a.  2004 Suburban | $550 |
| b.  2007 Dodge Durango | $750 |
| c.  2009 1 ton Chevy pickup | $8,951 |
| d.  2011 Chevy Silverado 3500HP | $16,902 |
| e.  2001 GMC Sierra 3500HP | $17,462 |
| f.  2014 Chevy Silverado 1500 | $28,837 |
| g.  2015 Chevy Silverado 2500 (x7191) | $31,438 |
| h.  2015 Chevy Silverado 2500 (x5336) | $30,970 |
| i.  2015 Chevy Silverado 2500 (x9680) | $27,541 |
| j.  2015 Chevy Silverado 2500 (x1215) | $27,541 |
| k.  40 ft. Flatbed Gooseneck Trailer | $2,388 |
| l.  Stock 3217X | $750 |
| Total Vehicles: | $194,080 |

13.     On the Petition Date, the Debtor filed its Expedited Motion For Authority To Use Cash Collateral (the "Cash Collateral Motion"). {Docket No. 6}. As stated in the Cash Collateral Motion, the Debtor is a party to a pre-petition Credit Facility with Société Générale and other financial institutions (the "Lender").

14.     Due to a number of urgent and time sensitive matters on the docket in this case, the Committee was formed quickly by the U.S. Trustee.  The Committee took action to locate counsel as quickly as possible and filed Applications to employ Counsel with the Court.

15.     Debtor entered into a Credit Agreement dated as of August 29, 2014 (as amended, restated or otherwise modified from time to time, the "Credit Facility") with the Debtor as Borrower, and Société Générale and Mutual of Omaha Bank Société Générale as the Lenders (collectively the "Lenders").  Société Générale apparently serves as the Administrative Agent under the Credit Facility.

16. Debtor also entered into a Mortgage, Security Agreement, Financing Statement, Fixture Filing, and Assignment of Production ("2014 Mortgage") dated August 2014 where Société Générale Financial Corporation is listed as the "Collateral Agent" for the "Administrative Agent" Société Générale in which the Debtor granted a lien in and upon certain leases which are attached as an exhibit to the 2014 Mortgage and attached hereto as Exhibit A (the "Original Wyoming Leases") in two Wyoming counties, Carbon and Sublette.

17. Later, the Debtor and Société Générale entered into a Forbearance Agreement and First Amendment to Credit Agreement dated July 31, 2015. Under the terms of the Forbearance Agreement, the Debtor granted Société Générale additional security in other leases. Debtor entered into a Mortgage, Security Agreement, Financing Statement, Fixture Filing, and Assignment of Production ("2015 Mortgage") dated July 21, 2015 where Société Générale Financial Corporation is listed as the "Collateral Agent" for the "Administrative Agent" Société Générale in which the Debtor granted a lien in and upon certain leases which are attached as an exhibit to the 2015 Mortgage and attached hereto as Exhibit B (the "Additional Wyoming Leases"). The Original Wyoming Leases together with the Additional Wyoming Leases are collectively referred to herein as the "Wyoming Leases." Société Générale then perfected its interest by filing the 2015 Mortgage in seven counties in Wyoming, which are Campbell, Carbon, Crook, Fremont, Lincoln, Natrona and Sweetwater.

18. The Debtor's subsidiary, Eastern Washakie Midstream LLC, also executed a mortgage and granted a lien against certain easements, which is attached as Exhibit C to this Complaint ("Subsidiary Pipeline Mortgage"). However, the easements and rights of way listed in the attachment to this Subsidiary Pipeline Mortgage are identical to the property of the Debtor's bankruptcy estate listed on the Debtor's Schedule A. The Debtor's Schedule A

specifies that the title to the easements and rights of way for this pipeline is "held by Debtor for Eastern Washakie Midstream LLC." The Committee has not been provided with any mortgage in which the Debtor granted a lien on such easements or rights of way.

19.     Société Générale filed a UCC financing statement in several states. For instance, it filed a UCC financing statement in Maryland on September 9, 2014 indicating that it held a lien against "All assets of Debtor, whether tangible or intangible, whether now owned or hereafter acquired or coming into existence, and wherever located."

20.     The Debtor filed its proposed Chapter 11 Plan and Disclosure Statement. The Disclosure Statement alleged that the Credit Facility is collateralized by substantially all of Debtor's oil and gas producing properties, and substantially all other assets, pursuant to the following: (i) Mortgage, Security Agreement, Financing Statement, Fixture Filing and Assignment of Production dated August 29, 2014 and recorded on September 16, 2014, at Book 1258, Page 284, in the land records of Carbon County, Wyoming; (ii) Mortgage, Security Agreement, Financing Statement, Fixture Filing and Assignment of Production dated July 21, 2015, and recorded July 30, 2015 at Book 1274 Page 283 in the land records of Carbon County, Wyoming; (iii) UCC Financing Statement filed On September 10, 2014, in the office of the Maryland Secretary of State at File No. 181509780; (iv) UCC Financing Statement filled on September 16, 2014, and recorded at Book 1258, Page 284 in Carbon County, Wyoming; (v) the Interim Order (A) Authorizing Postpetition Use of Cash Collateral; (B) Granting Adequate Protection Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, and 507, Bankruptcy Rules 2002, 4001, and 9014; (C) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001; and (D) Granting Related Relief, entered on November 11, 2015; and (vi) the Final Order (A) Authorizing Postpetition Use of Cash Collateral; (B) Granting Adequate Protection Pursuant To 11 U.S.C. §§

6

105, 361, 362, 363, and 507, Bankruptcy Rules 2002, 4001, and 9014; and (C) Granting Related Relief, entered on December 2, 2015, granting adequate protection liens in such property of Debtor as described in such order. As of the Petition Date, Debtor was indebted to the Senior Secured Lenders in the aggregate amount of not less than: (i) $36,886,300.00 in aggregate principal amount; (ii) accrued and unpaid interest and fees of $393,658.68 as of the Petition Date; and (iii) additional amounts claimed as owed under the Credit Facility. These amounts substantially exceed the borrowing base as re-determined as of September 30, 2015.

**Cash Collateral Motion, Committee's Objection**

21.     On December 2, 2015, the Court entered a Final Order regarding the use of cash collateral, adequate protection, and other relief ("Cash Collateral Order")(Docket No. 112).  In the Cash Collateral Order, the Court made certain findings regarding the validity, priority, perfection of the Defendants' liens.  However, the order provided the Committee with a 60 day "Challenge Period" in which to investigate and bring a challenge to the Defendants' liens and claims. Cash Collateral Order, ¶17. The Challenge Period has been extended twice by agreement and by Order of the Court, with the latest deadline being March 15, 2016.  This extended deadline has not yet expired.

**Committee Investigation**

a.     Oil and Gas Leases

22.     In an effort to perfect their liens, Defendants filed the 2014 Mortgage and 2015 Mortgage (or like document) in certain Wyoming counties where the Debtor held oil and gas leases.  These mortgages are described in the Debtor's Disclosure Statement.

23.     Based on its investigation, the Committee discovered that in certain instances, the Defendants either do not hold a lien, or did not properly perfected its liens against the oil and gas

7

leases. Société Générale only appears to have properly perfected liens in the Wyoming Leases. However, the Debtor lists on its Schedules numerous leases which are not listed on the 2014 and 2015 Mortgages (the "Missing Leases"). The Defendants' 2014 and 2015 Mortgages include lists of collateral which describe oil and gas leases in Wyoming, but not any of the other states where the other oil and gas leases are located such as Colorado, North Dakota and New Mexico. Also, the Debtor has leases in other counties in Wyoming such as Laramie which are also not listed on the filed 2014 and 2015 Mortgages. As represented by its agent, Société Générale only appears to have filed a mortgage in the eight counties in Wyoming and no other counties or states even though the Debtor's Schedule A lists leases located in North Dakota, Colorado and New Mexico. As a result, only those leases that are listed on Exhibits A and B are perfected.

24.     Under applicable law, for a lien to perfect, the mortgage (or like document) must identify the property encumbered such that others would know of the encumbrance, and must be filed in the County in which the property is located.

<u>b.      Commercial Tort Claims</u>

25.     Upon information and belief, the Debtor has a policy for claims against directors and officers. The Committee has examined the loan and security documentation of the Defendants regarding "commercial tort claims." Although the loan and securities documents provide for a security interest in "commercial tort claims," no description or other information regarding such claims is included, as required by the Uniform Commercial Code.

26.     The UCC filed with the State of Maryland only describes a lien on all assets and not on a commercial tort claim as required by the UCC.

27.     Section 10.9 of the Credit Facility provides that the Credit Facility shall be governed by New York law.

<u>c.</u>     <u>Vehicles</u>

28.     The Debtor listed twelve (12) vehicles on its Bankruptcy Schedule B as detailed above ("Vehicles").

29.     The total value of the Vehicles as of the Petition Date is approximately ONE HUNDRED NINETY FOUR THOUSAND EIGHTY DOLLARS ($194,080) according to the Debtor's Bankruptcy Schedules.

30.     Based on the Committee's investigation, the Defendants do not have a perfected lien against the Vehicles.   The Committee has not been provided with evidence that the Defendants hold a valid lien against any of the Vehicles.

<u>d.</u>     <u>Pipeline</u>

31.     Based on the Committee's investigation, the Defendants do not have a perfected lien against any interest the Debtor has in the Eastern Washakie Midstream LLC pipeline, easements, or rights of way.

32.     As provided above, the Committee has not received a recorded copy of any mortgage evidencing the Defendants' security interest in the Debtor's easements and rights of way related to the Eastern Washakie Midstream LLC pipeline.  The only record of any mortgage was granted by the Debtor's subsidiary, and not the Debtor.

33.     The grant of a security interest by Eastern Washakie Midstream LLC does not constitute a grant of any security interest in assets held by the Debtor.

**FIRST CLAIM FOR RELIEF**
**(For Declaratory Judgment that the Defendants**
**Maintain No Security Interest in the Missing Leases)**

34.     The Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint with the same force and effect as though set forth herein.

35.     The Defendants' mortgages do not list the Missing Leases.  Proper identification is required for a lien to attach.  Because the mortgages do not identify the leases, the liens do not attach to them.

36.     Filing of a mortgage in the county in which the lease is located is required for a lien to attach. Because the mortgages were not filed in the appropriate counties, the liens are unperfected.

37.     The Defendants' liens only extend to the Wyoming Leases and no other leases.

38.     Accordingly, the Debtor's estate is entitled to a declaratory judgment that the Defendants maintain no security interest in the Missing Leases and its proceeds, including revenue generated from the leases, and only has a lien on the Wyoming Leases.

WHEREFORE, the Plaintiff prays as hereinafter set forth.


**SECOND CLAIM FOR RELIEF**
**(In the Alternative, For Avoidance of Liens Against Missing Leases as Unperfected)**

39.     The Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint with the same force and effect as though set forth herein.

40.     11 U.S.C. § 544(a)(1), empowers a trustee (or a debtor in possession under 11 U.S.C. § 1107) to avoid any transfer of property of the debtor that is voidable by a hypothetical judicial lien creditor.   Similarly, 11 U.S.C. § 544(a)(3) empowers a trustee (or debtor in possession under 11 U.S.C. § 1107) to avoid any transfer avoidable by a hypothetical bona fide purchaser of real property.  These provisions empower a trustee (or a debtor in possession under 11 U.S.C. § 1107) to avoid an unperfected security interest in a debtor's assets.  Under 11 U.S.C. § 551, the avoided lien is preserved for the benefit of the estate.

41.     To the extent that the Defendants have a security interest attached to the Missing Leases, the Defendants failed to perfect liens in these leases.  The Defendants failed to list the leases in the 2014 and 2015 Mortgages.

42.     Based on the foregoing and pursuant to 11 U.S.C. § 544(a), the Committee, on behalf of the Debtor's estate, may avoid these unperfected liens in the Missing Leases and their proceeds, including revenue generated from the leases.  Because these liens are subject to avoidance under Section 544(a), the property is preserved for the benefit of the estate under 11 U.S.C. § 551.

WHEREFORE, the Plaintiff prays as hereinafter set forth.

### THIRD CLAIM FOR RELIEF
### (For Declaratory Judgment that the Defendants Maintain No Security Interest in the Debtors' Commercial Tort Claims.)

43.     The Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint with the same force and effect as though set forth herein.

44.     Defendants have no lien in any commercial tort claim, including without limitation claims against the Debtors' directors and officers for breach of fiduciary duty, because no such tort claim is described in specificity in the prepetition loan documents, as required by the Uniform Commercial Code.  Section 9-108(e) of the Maryland Uniform Commercial Code requires that commercial tort claims be described specifically:  "[a] description only by type of collateral defined in Titles 1 through 10 of this article is an insufficient description of: (1) A commercial tort claim . . . .  (Md. Commercial Law Code Ann. § 9-108(e)); N.Y.U.C.C. § 9-108(e).

45.     In addition to the failure to adequately describe the collateral, the Defendants' liens cannot attach to commercial tort claims not in existence at the time that the security

agreements were executed because after-acquired property clauses are not applicable to commercial tort claims under the Uniform Commercial Code. (Md. Commercial Law Code Ann. § 9-204(b)(2); N.Y.U.C.C. § 9-204(b)(2)).

46.     Accordingly, the Debtor's estate is entitled to a declaratory judgment that the Defendants maintain no security interest on Debtor's commercial tort claims, including without limitation claims against officers and directors for breach of fiduciary duty.

WHEREFORE, the Plaintiff prays as hereinafter set forth.

### FOURTH CLAIM FOR RELIEF
### (In the Alternative, For Avoidance of Liens
### Against Commercial Tort Claims as Unperfected)

47.     The Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint with the same force and effect as though set forth herein.

48.     11 U.S.C. § 544(a)(1), empowers a trustee (or a debtor in possession under 11 U.S.C. § 1107) to avoid any transfer of property of the debtor that is voidable by a hypothetical judicial lien creditor.   Similarly, 11 U.S.C. § 544(a)(3) empowers a trustee (or debtor in possession under 11 U.S.C. § 1107) to avoid any transfer avoidable by a hypothetical bona fide purchaser of real property.   These provisions empower a trustee (or a debtor in possession under 11 U.S.C. § 1107) to avoid an unperfected security interest in a debtor's assets.   Under 11 U.S.C. § 551, the avoided lien is preserved for the benefit of the estate.

49.     To the extent that the Defendants have a security interest attached to the Commercial Tort Claims, the Defendants failed to perfect liens in these claims.   The applicable Uniform Commercial Code requires that commercial tort claims be described specifically by type.   Section 9-108(e).   The Defendants' UCC filing which notes a lien upon "all assets" is not sufficient under the relevant provisions of the UCC to perfect its interest.

12

50.     Further, Defendants' liens cannot attach to commercial tort claims not in existence at the time that the security agreements were executed because after-acquired property clauses are not applicable to commercial tort claims.  U.C.C. § 9-204(b)(2).

51.     Based on the foregoing and pursuant to 11 U.S.C. § 544(a), the Committee, on behalf of the Debtor's estate, may avoid these unperfected liens in the Commercial Tort Claims. Because these liens are subject to avoidance under Section 544(a), the property is preserved for the benefit of the estate under 11 U.S.C. § 551.

WHEREFORE, the Plaintiff prays as hereinafter set forth.

### FIFTH CLAIM FOR RELIEF
### (For Declaratory Judgment that Defendants Hold No Adequate
### Protection Lien or Claim Against Vehicles)

52.     The Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint with the same force and effect as though set forth herein.

53.     The Committee has not been provided with any evidence of any liens against the Debtor's Vehicles.

54.     The Defendants' liens against the Vehicles cannot attach without evidence of such interest.

55.     Accordingly, the Debtors' estates are entitled to a declaratory judgment that the Defendants maintain no security interest against the Debtor's Vehicles.

WHEREFORE, the Plaintiff prays as hereinafter set forth.

## SIXTH CLAIM FOR RELIEF
### (In the Alternative, For Avoidance of Liens
### Against Vehicles as Unperfected)

56.     The Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint with the same force and effect as though set forth herein.

57.     11 U.S.C. § 544(a)(1), empowers a trustee (or a debtor in possession under 11 U.S.C. § 1107) to avoid any transfer of property of the debtor that is voidable by a hypothetical judicial lien creditor.   Similarly, 11 U.S.C. § 544(a)(3) empowers a trustee (or debtor in possession under 11 U.S.C. § 1107) to avoid any transfer avoidable by a hypothetical bona fide purchaser of real property.   These provisions empower a trustee (or a debtor in possession under 11 U.S.C. § 1107) to avoid an unperfected security interest in a debtor's assets.   Under 11 U.S.C. § 551, the avoided lien is preserved for the benefit of the estate.

58.     To the extent that the Defendants have a security interest attached to the Vehicles, the Defendants failed to perfect liens in these Vehicles.

59.     Based on the foregoing and pursuant to 11 U.S.C. § 544(a), the Committee, on behalf of the Debtor's estate, may avoid these unperfected liens in the Vehicles.   Because these liens are subject to avoidance under Section 544(a), the property is preserved for the benefit of the estate under 11 U.S.C. § 551.

WHEREFORE, the Plaintiff prays as hereinafter set forth.

## SEVENTH CLAIM FOR RELIEF
### (For Declaratory Judgment that Defendants Hold No Adequate Protection Lien or Claim Against Pipeline)

60.     The Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint with the same force and effect as though set forth herein.

61.     The Debtor's subsidiary, Eastern Washakie Midstream LLC executed a mortgage and granted a lien in certain easements which are attached as Exhibit C to this Complaint. However, the Pipeline Easements listed in the attachment to that mortgage are also listed as property of the Debtor's bankruptcy estate on its Schedule A.   The Committee has not been provided with any Mortgage in which the Debtor granted a lien on such easements.

62.     The Defendants' liens against the Pipeline Easements do not attach.   Accordingly, the Debtor's estate is entitled to a declaratory judgment that the Defendants maintain no security interest against the Debtor's Pipeline.

WHEREFORE, the Plaintiff prays as hereinafter set forth.

## EIGHTH CLAIM FOR RELIEF
### (In the Alternative, For Avoidance of Liens Against Pipeline as Unperfected)

63.     The Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint with the same force and effect as though set forth herein.

64.     11 U.S.C. § 544(a)(1), empowers a trustee (or a debtor in possession under 11 U.S.C. § 1107) to avoid any transfer of property of the debtor that is voidable by a hypothetical judicial lien creditor.   Similarly, 11 U.S.C. § 544(a)(3) empowers a trustee (or debtor in possession under 11 U.S.C. § 1107) to avoid any transfer avoidable by a hypothetical bona fide purchaser of real property.   These provisions empower a trustee (or a debtor in possession under

15

11 U.S.C. § 1107) to avoid an unperfected security interest in a debtor's assets. Under 11 U.S.C. § 551, the avoided lien is preserved for the benefit of the estate.

65.      To the extent that the Defendants have a security interest attached to the Pipeline, the Defendants failed to perfect liens in this asset.

66.      Based on the foregoing and pursuant to 11 U.S.C. § 544(a), the Committee, on behalf of the Debtor's estate, may avoid these unperfected liens in the Pipeline. Because these liens are subject to avoidance under Section 544(a), the property is preserved for the benefit of the estate under 11 U.S.C. § 551.

WHEREFORE, the Plaintiff prays as hereinafter set forth.

## CONCLUSION

WHEREFORE, Plaintiff prays for judgment as follows:

a.      That Plaintiff be awarded declaratory judgment against Defendants on the following claims:

  i.   That the Defendants hold no security interest in the Missing Leases and their proceeds, including revenue generated from the leases;

  ii.  That the Defendants hold no security interest in the Debtor's Vehicles;

  iii. That the Defendants hold no security interest in the Commercial Tort Claims; and

  iv.  That the Defendants hold no security interest in the Pipeline;

b.      That Plaintiff be awarded judgment against Defendants on Plaintiff's claims as follows:

  i.   Avoidance of liens against Missing Leases and their proceeds, including revenue generated from the leases;

  ii.  Avoidance of liens against the Debtor's Vehicles;

16

      iii.   Avoidance of liens against Commercial Tort Claims; and

      iv.   Avoidance of liens against the Debtor's Pipeline interests.

c.      For such further and equitable relief as the Court deems just and proper.

Dated: March 14, 2016.             Respectfully submitted,

By:   /s/  Michelle E. Shriro
     Larry A. Levick
     Texas State Bar No. 12252600
     Michelle E. Shriro
     Texas State Bar No. 18310900
     **SINGER & LEVICK, P.C.**
     16200 Addison Road, Suite 140
     Addison, TX  75001-5350
     Phone:  972.380.5533
     Fax:  972.380.5748
     E-Mail: mshriro@singerlevick.com

By:   */s/  Lee M. Kutner*
     Lee M. Kutner, #10966
     Jenny M.F. Fujii, #30091
     **KUTNER BRINEN GARBER, P.C.**
     1660 Lincoln Street, Suite 1850
     Denver, CO 80264
     Telephone:  (303) 832-2400
     Telecopy: (303) 832-1510
     E-Mail: lmk@kutnerlaw.com

     **COUNSEL FOR THE OFFICIAL
UNSECURED CREDITORS COMMITTEE**

9/16/2014 12:24 PM
Page:35 of 45
0956736 Bk:1258 Pg:283 Carbon WY Fees:$417.00 User:SP

## EXHIBIT A

### SCHEDULE OF LEASES

Exhibit A to
Complaint

Attached to and made a part of that certain Mortgage, Security Agreement, Financing Statement, Fixture Filing and Assignmental Production by and among Escalera Resources Co., as Mortgagor, Societe Generale Financial Corporation, as Collateral Agent for the Administrative Agent and Societe Generale as Administrative Agent dated as of August 29, 2014, effective as of August 29, 2014

| Unit Information | Lease | TWP | RNG | | Description | Interest Type | GWI | NRI |
|---|---|---|---|---|---|---|---|---|
| Spyglass Hill Unit Mesaverde (CBM) Formation Participating Area "B" (Doty Mountain) | WYW-116179 | T17N | R91W | 25 | W2, E2E2, NENE | WI | 13.52% | 10.16% |
| | WYW-133658 | T17N | R91W | All lands | | WI | 100.00% | 87.50% |
| | WYW-136728 | T17N | R91W | All lands | surface to base of Mesaverde | WI | 15.53% | 8.81% |
| Operator: Warren E&P Inc. | WYW-137692 | T17N | R91W | All lands | | WI | 15.53% | 8.80% |
| PA Effective 1 Sept 2013 | WYW-141686 | T17N | R91W | All lands | | WI | 100.00% | 87.50% |
| 5th Revision (Current) Approved: 27 March 2014 | WYW-154149 | T17N | R90W | All lands | | WI | 21.00% | 17.33% |
| | WYW-155531 | T17N | R91W | All lands | | WI | 10.50% | 8.62% |
| | WYW-159153 | T17N | R91W | All lands | | WI | 21.00% | 18.38% |
| All situated in Carbon County, WY | ST-96-435 | T17N | R91W | All lands | | WI | 100.00% | 79.83% |
| | Patented DMU TR 18 | T17N | R91W | 1 | SWSW | WI | 10.50% | unleased |
| | Patented DMU TR 18 | T17N | R91W | 11 | ALL | WI | 10.50% | unleased |
| | Patented DMU TR 18 | T17N | R91W | 13 | ALL | WI | 10.50% | unleased |
| | Patented DMU TR 18 | T17N | R91W | 15 | S2, S2N2, N2NE, NENW | WI | 10.50% | unleased |
| | Patented DMU TR 18 | T17N | R91W | 21 | ALL | WI | 10.50% | unleased |
| | Patented DMU TR 18 | T17N | R91W | 23 | ALL | WI | 10.50% | unleased |
| | Patented DMU TR 18 | T17N | R91W | 27 | NW, W2NE | WI | 10.50% | unleased |
| | Patented DMU TR 18 | T17N | R91W | 29 | ALL | WI | 10.50% | unleased |
| | Patented DMU TR 18 | T17N | R90W | 7 | Lot 4 (SWSW) | WI | 10.50% | unleased |
| | Patented DMU TR 17 | T17N | R91W | 24 | ALL | WI | 10.50% | 8.67% |
| | Patented DMU TR 17 | T17N | R90W | 18 | Lots 1-4 (W2W2) | WI | 10.50% | 8.67% |
| | Patented DMU TR 17 | T17N | R90W | 19 | Lots 1-4 (W2W2) | WI | 10.50% | 8.67% |

| Unit Information | Lease | DMU TR | TWP | RNG | Description | Interest Type | GWI | NRI |
|---|---|---|---|---|---|---|---|---|
| Spyglass Hill (CBNG) Unit - Doty Mountain (CBM) lands as merged into Spyglass Hill effective 1 May 2013 | | | | | Section 25 SW4 | WI (BPO) | 1.06% | 6.93% |
| | WYW-116179 | 1 | T17N | R91W | Section 25 SW4 | WI (APO) | 1.49% | 10.03% |
| | | | | | All other lands | WI | 11.88% | 11.05% |
| | WYW-129709 | 2 | T17N | R91W | All lands | WI | 25.00% | 19.99% |
| Operator: Warren E&P Inc. | WYW-133658 | 3 | T17N | R91W | All lands | WI | 100.00% | 87.50% |
| Effective: 10 June 2011 | WYW-135672 | 4 | T17N | R91W | All lands | WI | 25.00% | 21.64% |
| | WYW-136728 | 5 | T17N | R91W | All lands- surface to base of Mesaverde | WI | 10.28% | 8.81% |
| All situated in Carbon County, WY | WYW-137692 | 6 | T17N | R91W | All lands | WI | 10.28% | 8.80% |
| | WYW-141686 | 8 | T17N | R91W | All lands | WI | 100.00% | 87.50% |
| | WYW-148968 | 9 | T17N | R90W | All lands | WI | 10.50% | 9.19% |
| | WYW-148970 | 10 | T17N | R90W | All lands | WI | 10.50% | 9.19% |
| | WYW-148975 | 11 | T17N | R90W | All lands | WI | 10.50% | 9.19% |
| | WYW-154149 | 12 | T17N | R90W | All lands | WI | 21.00% | 17.33% |
| | WYW-155531 | 13 | T17N | R91W | All lands | WI | 10.50% | 8.62% |
| | WYW-159153 | 14 | T17N | R91W | All lands | WI | 21.00% | 18.38% |
| | ST 96-435 Patented | 15 | T17N | R91W | All lands | WI | 100.00% | 79.83% |

9/16/2014 12:24 PM
Page:36 of 45
0956736 Bk:1258 Pg:283 Carbon WY Fees:$417.00   User:SP

| Owners | Section TWP | RNG | Description | Interest Type | GWI | NRI |
|---|---|---|---|---|---|---|
| *George R. Salisbury, Jr. & Laura Salisbury 50%* | 17 T17N | R91W R90W | All lands & leases | WI | 10.50% | 8.67% |
| *Deanna Morrison 25% Friends of Americas 25%* | | | | | | |
| Patented | | | | | | |
| | 18 T17N | R91W R90W | All lands & leases | WI | 10.50% | unleased |
| *Anadarko Land Corp. 100%* | | | | | | |
| Patented *Elizabeth Ann Gilchrist, Trustee of the R. S. Robertson Family Trust dated 3-7-90 62.5%* *Sandra B. (Brown) Brome, Trustee of the Sandra B. Brome Living Trust dated 7-27-99 20.83333%* *Louise B. Erb 8.33333%* *Debra D. Black & Malcolm T. Black 2.7778%* *Douglas C. Hughes & Colleen M. Hughes 2.77777%* *Sharron S. Parr, a/k/a Sharron H. Parr 2.77777%* | 19 T18N | R90W | All Lands | WI | 21.00% | 18.38% |
| WYW-137693 | 20 T17N | R91W | All lands | WI | 15.53% | 13.30% |

| Unit Information | Lease | TWP | RNG | Description | Interest Type | GWI | NRI |
|---|---|---|---|---|---|---|---|
| **Spyglass Hill (CBNG) Unit - Sun Dog (CBM) Participating Area as merged into Spyglass Hill effective 1 May 2013** | | | | All lands, save and except S2 | | | |
| | WYW-116679 | T16N | R91W | Section 8 | WI | 55.25% | 46.04% |
| | WYW-126439 | T16N | R91W | NO INTEREST | | 0.00% | 0.00% |
| | WYW-128137 | T16N | R91W | All lands | WI | 55.25% | 47.30% |
| **Operator: Warren E&P Inc.** | WYW-128664 | T16N | R91W | All lands | WI | 55.25% | 47.30% |
| **PA Effective 27 April 2002** | WYW-131778 | T16N | R91W | All Lands | WI | 25.00% | 8.63% |
| **11th Revision (Current) : 1 Nov 2008** | WYW-137690 | T16N | R91W | All lands | WI | 10.50% | 8.56% |
| | WYW-139142 | T16N | R91W | All lands | WI | 10.50% | 8.63% |
| | WYW-141278 | T16N | R91W | All lands | WI | 10.50% | 8.63% |
| | WYW-141279 | T16N | R91W | All lands | WI | 10.50% | 8.63% |
| | WYW-141280 | T16N | R91W | All lands | WI | 10.50% | 8.63% |
| **All situated in Carbon County, WY** | WYW-141281 | T16N | R91W | All lands | WI | 10.50% | 8.63% |
| | WYW-147856 | T16N | R91W | All lands | WI | 100.00% | 87.50% |
| | WYW-148482 | T16N | R91W | All lands | WI | 15.75% | 13.35% |
| | WYW-156555 | T16N | R91W | All lands | WI | 21.00% | 18.38% |
| | WYW-123998 | T16N | R91W | All lands | WI | 55.25% | 47.44% |
| | ST 99-357 | T16N | R91W | All lands | WI | 30.25% | 24.49% |
| | WYW-161909 | T17N | R91W | All lands | WI | 37.35% | 30.95% |
| | | T16N | R91W | | | 10.50% | |
| | WYW-133656 | | | All lands, save and except lands in Sections 22 & 27 | WI | | 8.62% |
| | WYW-161910 | T17N | R91W | All lands | WI | 100.00% | 87.50% |
| | WYW-163348 | T16N | R91W | All lands | WI | 25.00% | 21.73% |
| | WYW-161914 | T17N | R91W | All lands | WI | 10.50% | 8.62% |

| | Lease | SDU TR | TWP | RNG | Description | Interest Type | GWI | NRI |
|---|---|---|---|---|---|---|---|---|
| | ST 95-446 | | T17N | R91W | All lands | WI | 55.25% | 45.58% |
| | ST 98-716 | | T17N | R91W | All lands | WI | 10.50% | 9.01% |

| Unit Information | Lease | SDU TR | TWP | RNG | Description | Interest Type | GWI | NRI |
|---|---|---|---|---|---|---|---|---|
| **Spyglass Hill (CBNG) Unit - Sun Dog (CBM) lands as merged into Spyglass Hill effective 1 May 2013** | WYW-48743-A | 1 T16N | | R91W | NO INTEREST | | 0.00% | 0.00% |
| | | | | | All lands, save and except S2 | | | |
| | WYW-116679 | 3 T16N | | R91W | Section 8 | WI | 55.25% | 46.04% |
| | WYW-126439 | 4 T16N | | R91W | NO INTEREST | | 0.00% | 0.00% |
| **Operator: Warren E&P Inc.** | WYW-128130 | 5 T16N | | R90W | All lands | WI | 32.88% | 27.12% |
| **Effective: 10 June 2011** | WYW-128137 | 6 T16N | | R91W | All lands | WI | 55.25% | 47.30% |
| | WYW-128138 | 7 T16N | | R91W | All lands | WI | 10.50% | 8.63% |
| | WYW-128664 | 9 T16N | | R91W | All lands | WI | 55.25% | 47.30% |
| | WYW-131778 | 11 T16N | | R91W | All Lands | WI | 25.00% | 8.63% |
| | WYW-133657 | 12 T16N | | R91W | All lands | WI | 100.00% | 87.50% |
| **All situated in Carbon County, WY** | WYW-134260 | 13 T16N | | R90W | All lands | WI | 10.50% | 8.56% |
| | WYW-137690 | 14 T16N | | R91W | All lands | WI | 10.50% | 8.56% |
| | WYW-139142 | 18 T16N | | R91W | All lands | WI | 10.50% | 8.63% |
| | WYW-141278 | 19 T16N | | R91W | All lands | WI | 10.50% | 8.63% |
| | WYW-141279 | 20 T16N | | R91W | All lands | WI | 10.50% | 8.63% |
| | WYW-141280 | 21 T16N | | R91W | All lands | WI | 10.50% | 8.63% |
| | WYW-141281 | 22 T16N | | R91W | All lands | WI | 10.50% | 8.63% |
| | WYW-141282 | 23 T16N | | R91W | NO INTEREST | | 0.00% | 0.00% |
| | WYW-147856 | 24 T16N | | R91W | All lands | WI | 100.00% | 87.50% |
| | WYW-148470 | 25 T16N | | R90W | All lands | WI | 10.50% | 8.70% |
| | WYW-148482 | 26 T16N | | R91W | All lands | WI | 15.75% | 13.35% |
| | WYW-156555 | 28 T16N | | R91W | All lands | WI | 21.00% | 18.38% |
| | WYW-154148 | 29a T16N | | R91W | NO INTEREST | | 0.00% | 0.00% |
| | WYW-123998 | 29b T16N | | R91W | All lands | WI | 55.25% | 47.44% |
| | ST 99-356 | 31 T16N | | R91W | All lands | WI | 30.25% | 25.08% |
| | ST 99-357 | 32 T16N | | R91W | All lands | WI | 30.25% | 24.49% |
| | Patented | | | | | | | |
| | *Black Stone Minerals Company, LP 50%* | | | | | WI | 5.25% | 4.92% |
| | *Friends of Americas 25%* | 34 T16N | | R90W | All lands | WI | 0.00% | 0.00% |
| | *Deanna Morrison 25%* | | | | | WI | 2.63% | 2.53% |
| | Patented | | | | | | | |
| | *George R. Salisbury, Jr. & Laura Salisbury& Laura Salisbury 50%* | | | | | WI | 5.25% | 4.92% |
| | *Friends of Americas 25%* | 35 T16N | | R91W | All lands | WI | 2.63% | 2.54% |
| **Spyglass Hill (CBNG) Unit - Sun Dog (CBM) lands as merged into Spyglass Hill effective 1 May 2013** | *Deanna Salisbury Morrison 25%* | | | | | WI | 2.63% | 2.54% |
| | Patented | | | | | | | |
| | *Deanna Salisbury Morrison 25%* | | | | | WI | 2.63% | 2.53% |
| | *Friends of Americas 25%* | | | | | WI | 2.63% | 2.54% |
| **CONTINUED** | *Black Stone Minerals Company, LP 50% (Lease is limited to depths & formations lying between surface and base of Mesaverde Formation)* | 36 T16N | | R90W | All lands | WI | 10.50% | 9.84% |
| | WYW-161909 | 37 T17N | | R91W | All lands | WI | 37.35% | 30.95% |
| | | | | | All lands, save and except lands in Sections 22 & 27 | | | |
| | WYW-133656 | 38 T16N | | R91W | | WI | 10.50% | 8.62% |
| | WYW-161910 | 39 T17N | | R91W | All lands | WI | 100.00% | 87.50% |

9/16/2014 12:24 PM
Page:38 of 45
0956736 Bk:1258 Pg:283 Carbon WY Fees:$417.00   User:SP

| | Lease | | TWP | RNG | Description | Interest Type | GWI | NRI |
|---|---|---|---|---|---|---|---|---|
| | WYW-134978 | | 40 T16N | R91W | NO INTEREST | | 0.00% | 0.00% |
| | WYW-163348 | | 41 T16N | R91W | All lands | WI | 25.00% | 21.73% |
| | WYW-148971 | | 42 T17N | R90W | All lands | WI | 50.00% | 44.00% |
| | WYW-161914 | | 43 T17N | R91W | All lands | WI | 10.50% | 8.62% |
| | ST 95-446 | | 44 T17N | R91W | All lands | WI | 55.25% | 45.58% |
| | ST 98-716 | | 45 T17N | R91W | All lands | WI | 10.50% | 9.01% |

| Unit Information | Lease | TWP | RNG | Description | Interest Type | GWI | NRI |
|---|---|---|---|---|---|---|---|
| Cow Creek Unit | WYC-075344A | T16N | R92W | All lands | WI | 100% | 79.50% |
| | WYC-075345A | T16N | R92W | All lands | WI | 100% | 79.57% |
| Operator: Escalera Resources Co. | WYC-075345B | T16N | R92W | All lands | WI | 100% | 79.50% |
| Effective: 6 Aug 1959 | WYW-048861 | T16N | R91W | All lands | WI | 100% | 80.25% |
| All situated in Carbon County, WY | WYW-048862 | T16N | R91W | All lands | WI | 100% | 82.14% |

| Unit Information | Lease | TR # | TWP | RNG | Description | Interest Type | GWI | NRI |
|---|---|---|---|---|---|---|---|---|
| Catalina (CBNG) Unit | WYW-0388015 | 1 T17N | R92W | NO INTEREST | | WI | 0.00% | 0.00% |
| | WYW-130162 | 2 T16N | R92W | All lands | | WI | 36.75% | 30.30% |
| Operator: Escalera Resources Co. | WYW-130676 | 3 T16N | R92W | All lands | | WI | 36.75% | 29.86% |
| Effective: 19 Jan 2006 | WYC-075344-A | 4 T16N | R92W | All lands | | WI | 100.00% | 79.50% |
| | WYW-131275 | 5 T16N | R91W | All lands | | WI | 86.75% | 69.83% |
| | WYC-075345A | 6 T16N | R92W | All lands | | WI | 100.00% | 79.57% |
| | WYC-075345B | 6a T16N | R92W | All lands | | WI | 100.00% | 79.50% |
| | WYW-048861 | 7 T16N | R91W | All lands | | WI | 100.00% | 80.25% |
| | WYW-136729 | 8 T17N | R91W | All lands | | WI | 66.67% | 54.45% |
| | WYW-048862 | 9 T16N | R91W | All lands | | WI | 100.00% | 82.14% |
| | WYW-136955 | 10 T17N | R91W | All lands | | WI | 100.00% | 85.00% |
| | WYW-137164 | 11 T17N | R91W | All lands | | WI | 100.00% | 85.00% |
| | WYW-137698 | 12 T16N | R92W | All lands | | WI | 36.75% | 30.32% |
| | WYW-138643 | 13 T16N | R92W | All lands | | WI | 36.75% | 30.93% |
| | WYW-139366 | 14 T17N | R92W | All lands | | WI | 100.00% | 85.00% |
| | WYW-145698 | 15 T16N | R92W | All lands | | WI | 100.00% | 85.00% |
| | WYW-146996 | 16 T16N | R92W | All lands | | WI | 66.67% | 57.11% |
| | WYW-163347 | 17 T16N | R91W | All lands | | WI | 68.38% | 57.74% |
| All situated in Carbon County, WY | WYW-149296 | 18 T16N | R92W | NO INTEREST | | WI | 0.00% | 0.00% |
| | WYW-149297 | 19 T16N | R92W | NO INTEREST | | WI | 0.00% | 0.00% |
| | WYW-149298 | 20 T16N | R92W | NO INTEREST | | WI | 0.00% | 0.00% |
| | WYW-149299 | 21 T16N | R92W | All lands | | WI | 100.00% | 87.50% |
| | WYW-149300 | 22 T16N | R92W | All lands | | WI | 50.00% | 43.75% |
| | WYW-152679 | 23 T16N | R91W | All lands | | WI | 70.08% | 59.57% |
| | WYW-154169 | 24 T16N | R92W | All lands | | WI | 45.58% | 39.88% |
| | WYW-155529 | 25 T16N | R92W | All lands | | WI | 36.75% | 30.32% |
| | WYW-155530 | 26 T16N | R92W | All lands | | WI | 36.75% | 30.93% |
| | WYW-155783 | 27 T16N | R92W | All lands | | WI | 73.50% | 64.31% |
| | WYW-159156 | 28 T16N | R92W | NO INTEREST | | WI | 0.00% | 0.00% |
| | WYW-159157 | 29 T16N | R92W | NO INTEREST | | WI | 0.00% | 0.00% |
| | WYW-163520 | 30 T17N | R91W | All lands | | WI | 100.00% | 87.50% |
| | WYW-161911 | 31 T17N | R91W | All lands | | WI | 18.80% | 16.10% |
| | ST 97-302 | 32 T16N | R92W | W2 Section 36 | | WI | 66.67% | 54.82% |
| | ST 97-302 (PA B) | 32 T16N | R92W | E2 Section 36 | | WI | 100.00% | 82.22% |
| | ST 99-361 | 33 T17N | R92W | All lands | | WI | 43.38% | 35.43% |
| | Patented | 34 T17N | R92W | NO INTEREST | | WI | 0.00% | 0.00% |
| | Patented | 35 T17N | R91W | NO INTEREST | | WI | 0.00% | 0.00% |

| Unit Information | Lease | TWP | RNG | Description | Interest Type | GWI | NRI |
|---|---|---|---|---|---|---|---|
| The Mesa Unit | WYW-008589 | T32N | R109W | All lands | ORRI | 0.00313 | N/A |
| | WYW-008592 | T33N | R109W | All lands | CWI | 6.40% | N/A |

| Operator: QEP Energy Company | WYW-008593 | T33N | R109W | All lands | CWI | 6.40% N/A |
| Effective: 20 Oct 1980 | WYW-015315 | T32N | R109W | All lands | ORRI | 0.00313 N/A |
| | WYW-015317 | T32N | R109W | All lands | WI-Shallow | 6.25% variable |
| All Situated In Sublette County, WY | | | | | WI-Deep | 12.50% variable |
| | WYW-016167 | T33N | R109W | All lands | CWI | 6.40% N/A |
| | ST 79-0645 | T32N | R109W | All lands | | NO INTEREST |

| Unit Information | Lease | TWP | RNG | Description | Interest Type | GWI | NRI |
|---|---|---|---|---|---|---|---|
| The Mesa Unit - Lance Pool PA "B" | WYW-008589 | T32N | R109W | All lands | ORRI | 0.3125% N/A | |
| Operator: QEP Energy Company | WYW-015317 | | | | WI-Shallow | 6.25% variable | |
| Effective: 5 May 2003 | | | | | WI-Deep | 12.50% variable | |
| | ST 79-0645 | T32N | R109W | All lands | | NO INTEREST | |

| Unit Information | Lease | TWP | RNG | Description | Interest Type | Interest | NRI |
|---|---|---|---|---|---|---|---|
| The Mesa Unit - Lance Pool PA "C" | WYW-008592 | T33N | R109W | All lands | CWI | 6.40% N/A | |
| Operator: QEP Energy Company | WYW-008593 | T33N | R109W | All lands | CWI | 6.40% N/A | |
| Effective: 1 May 2003 | WYW-016167 | T33N | R109W | All lands | CWI | 6.40% N/A | |

| Unit Information | Lease | TWP | RNG | Description | Interest Type | Interest | NRI |
|---|---|---|---|---|---|---|---|
| The Mesa Unit - Lance Pool PA "A" | WYW-008589 | T32N | R109W | All lands | ORRI | 0.3125% N/A | |
| Operator: QEP Energy Company | WYW-015315 | T32N | R109W | All lands | ORRI | 0.3125% N/A | |
| Effective: 1 May 2003 | | | | | | | |

0956736 Bk:1258 Pg:283 Carbon WY Fees:$417.00 User:SP
9/16/2014 12:24 PM
Page:39 of 45

9/16/2014 12:24 PM
Page:40 of 45
0956736 Bk:1258 Pg:283 Carbon WY Fees:$417.00 User:SP

EXHIBIT A

LANDS & PROPERTIES

Attached to and made a part of that certain Mortgage, Security Agreement, Financing Statement, Fixture Filing and Assignmental Production by and among Escalera Resources Co., as Mortgagor, Societe Generale Financial Corporation, as Collateral Agent for the Administrative Agent and Societe Generale as Administrative Agent dated as of August 29, 2014, effective as of August 29, 2014

| Unit Information | Serial Number | Gross Acres | TWP | RNG | SECTION | QTR/QTR | County | State |
|---|---|---|---|---|---|---|---|---|
| Catalina (CBNG) Unit | WYW-163121X | 21,725 | 16N | 91W | 6 | ALL | Carbon | WY |
| | | | 16N | 91W | 7 | ALL | Carbon | WY |
| Operator: Escalera | | | | | | | | |
| Resources Co. | | | 16N | 91W | 18 | ALL | Carbon | WY |
| Effective: 19 Jan 2006 | | | 16N | 91W | 30 | ALL | Carbon | WY |
| | | | 16N | 91W | 31 | ALL | Carbon | WY |
| | | | 16N | 92W | 1 | ALL | Carbon | WY |
| | | | 16N | 92W | 2 | ALL | Carbon | WY |
| | | | 16N | 92W | 3 | ALL | Carbon | WY |
| | | | 16N | 92W | 10 | ALL | Carbon | WY |
| | | | 16N | 92W | 11 | ALL | Carbon | WY |
| | | | 16N | 92W | 12 | ALL | Carbon | WY |
| | | | 16N | 92W | 13 | ALL | Carbon | WY |
| | | | 16N | 92W | 14 | ALL | Carbon | WY |
| | | | 16N | 92W | 15 | ALL | Carbon | WY |
| | | | 16N | 92W | 21 | Lots 1-2, E2, NW, NESW | Carbon | WY |
| | | | 16N | 92W | 22 | ALL | Carbon | WY |
| | | | 16N | 92W | 23 | ALL | Carbon | WY |
| | | | 16N | 92W | 24 | ALL | Carbon | WY |
| | | | 16N | 92W | 25 | ALL | Carbon | WY |
| | | | 16N | 92W | 26 | ALL | Carbon | WY |
| | | | 16N | 92W | 27 | ALL | Carbon | WY |
| | | | 16N | 92W | 28 | Lots 1-3, E2, E2SW, SWSW | Carbon | WY |
| | | | 16N | 92W | 34 | ALL | Carbon | WY |
| | | | 16N | 92W | 35 | ALL | Carbon | WY |
| | | | 16N | 92W | 36 | ALL | Carbon | WY |
| | | | 17N | 91W | 27 | S2 | Carbon | WY |
| | | | 17N | 91W | 30 | W2 | Carbon | WY |
| | | | 17N | 91W | 31 | ALL | Carbon | WY |
| | | | 17N | 91W | 32 | ALL | Carbon | WY |
| | | | 17N | 91W | 33 | ALL | Carbon | WY |
| | | | 17N | 91W | 34 | Lots 3-6 (NW) | Carbon | WY |
| | | | 17N | 92W | 24 | S2 | Carbon | WY |
| | | | 17N | 92W | 25 | ALL | Carbon | WY |
| | | | 17N | 92W | 26 | ALL | Carbon | WY |
| | | | 17N | 92W | 34 | Lots 1-2, 7-10, 15-16 | Carbon | WY |
| | | | 17N | 92W | 35 | ALL | Carbon | WY |
| | | | 17N | 92W | 36 | ALL | Carbon | WY |

9/16/2014 12:24 PM
Page:41 of 45
0956736 Bk:1258 Pg:283 Carbon WY Fees:$417.00  User:SP

| Unit Information | Serial Number | Gross Acres | TWP | RNG | SECTION | QTR/QTR | County | State |
|---|---|---|---|---|---|---|---|---|
| Spyglass Hill Unit Mesaverde (CBM) Formation Participating Area "B" | WYW-177572B | 9,213.31 | 17N | 90W | 7 | Lot 4 (SWSW) | Carbon | WY |
| (Doty Mountain) | | | 17N | 90W | 18 | Lots 1-4 (W2W2) | Carbon | WY |
| | | | 17N | 90W | 19 | Lots 1-4 (W2W2) | Carbon | WY |
| Operator: Warren E&P Inc. | | | 17N | 91W | 1 | SWSW | Carbon | WY |
| PA Effective 1 Sept 2013 | | | 17N | 91W | 2 | S2SE4 | Carbon | WY |
| 5th Revision (Current) Approved: 27 March 2014 | | | 17N | 91W | 10 | E2E2, SWSE | Carbon | WY |
| | | | 17N | 91W | 11 | ALL | Carbon | WY |
| | | | 17N | 91W | 12 | W2SW, W2NW, SESW, S2SE | Carbon | WY |
| | | | 17N | 91W | 13 | ALL | Carbon | WY |
| | | | 17N | 91W | 14 | ALL | Carbon | WY |
| | | | 17N | 91W | 15 | S2, S2N2, N2NE, NENW | Carbon | WY |
| | | | 17N | 91W | 16 | S2S2, NESE | Carbon | WY |
| | | | 17N | 91W | 20 | E2E2, SWSE | Carbon | WY |
| | | | 17N | 91W | 21 | ALL | Carbon | WY |
| | | | 17N | 91W | 22 | ALL | Carbon | WY |
| | | | 17N | 91W | 23 | ALL | Carbon | WY |
| | | | 17N | 91W | 25 | ALL | Carbon | WY |
| | | | 17N | 91W | 26 | N2, SE4 | Carbon | WY |
| | | | 17N | 91W | 27 | N2 | Carbon | WY |
| | | | 17N | 91W | 28 | ALL | Carbon | WY |
| | | | 17N | 91W | 29 | ALL | Carbon | WY |
| | | | 17N | 91W | 30 | Lots 5, 12, 13, 20 (E2E2) | Carbon | WY |

| Unit Information | Serial Number | Gross Acres | TWP | RNG | SECTION | QTR/QTR | County | State |
|---|---|---|---|---|---|---|---|---|
| Spyglass Hill (CBNG) Unit - Doty Mountain (CBM) lands | WYW-157478X | 113290 | 17N | 90W | 5 | ALL | Carbon | WY |
| as merged into Spyglass Hill effective 1 May 2013 | | | 17N | 90W | 6 | Lots 1,2,6-11, S2NE, E2SW | Carbon | WY |
| | | | 17N | 90W | 7 | ALL | Carbon | WY |
| Operator: Warren E&P Inc. | | | 17N | 90W | 8 | ALL | Carbon | WY |
| Effective: 10 June 2011 | | | 17N | 90W | 17 | ALL | Carbon | WY |
| | | | 17N | 90W | 18 | ALL | Carbon | WY |
| | | | 17N | 90W | 19 | ALL | Carbon | WY |
| | | | 17N | 90W | 30 | ALL | Carbon | WY |
| | | | 18N | 90W | 32 | S2 | Carbon | WY |

69

| | | | | |
|---|---|---|---|---|
| 17N | 91W | 1 S2 | Carbon | WY |
| 17N | 91W | 2 SE | Carbon | WY |
| 17N | 91W | 6 SW | Carbon | WY |
| 17N | 91W | 7 ALL | Carbon | WY |
| 17N | 91W | 8 NE, S2 | Carbon | WY |
| 17N | 91W | 9 ALL | Carbon | WY |
| 17N | 91W | 10 ALL | Carbon | WY |
| 17N | 91W | 11 ALL | Carbon | WY |
| 17N | 91W | 12 ALL | Carbon | WY |
| 17N | 91W | 13 ALL | Carbon | WY |
| 17N | 91W | 14 ALL | Carbon | WY |
| 17N | 91W | 15 ALL | Carbon | WY |
| 17N | 91W | 16 ALL | Carbon | WY |
| 17N | 91W | 17 ALL | Carbon | WY |
| 17N | 91W | 18 ALL | Carbon | WY |
| 17N | 91W | 19 ALL | Carbon | WY |
| 17N | 91W | 20 ALL | Carbon | WY |
| 17N | 91W | 21 ALL | Carbon | WY |
| 17N | 91W | 22 ALL | Carbon | WY |
| 17N | 91W | 23 ALL | Carbon | WY |
| 17N | 91W | 24 ALL | Carbon | WY |
| 17N | 91W | 25 ALL | Carbon | WY |
| 17N | 91W | 26 ALL | Carbon | WY |
| 17N | 91W | 27 N2 | Carbon | WY |
| 17N | 91W | 28 ALL | Carbon | WY |
| 17N | 91W | 29 ALL | Carbon | WY |
| 17N | 91W | 30 E2 | Carbon | WY |

9/16/2014 12:24 PM
Page:42 of 45
0956736 Bk:1258 Pg:283 Carbon WY Fees:$417.00 User:SP

9/16/2014 12:24 PM
Page:43 of 45
0956736 Bk:1258 Pg:283 Carbon WY Fees:$417.00  User:SP

| Unit Information | Serial Number | Gross Acres | TWP | RNG | SECTION | QTR/QTR | County | State |
|---|---|---|---|---|---|---|---|---|
| Spyglass Hill (CBNG) Unit - Sun Dog (CBM) lands as merged into Spyglass Hill effective 1 May 2013 | WYW-152954X | 21,929.92 | 16N | 90W | 6 | ALL | Carbon | WY |
|  |  |  | 16N | 90W | 7 | ALL | Carbon | WY |
|  |  |  | 16N | 90W | 18 | ALL | Carbon | WY |
| Operator: Warren E&P Inc. |  |  | 16N | 90W | 19 | N2 | Carbon | WY |
| Effective: 10 June 2011 |  |  | 17N | 90W | 31 | ALL | Carbon | WY |
|  |  |  | 17N | 90W | 32 | ALL | Carbon | WY |
|  |  |  | 16N | 91W | 1 | ALL | Carbon | WY |
|  |  |  | 16N | 91W | 2 | ALL | Carbon | WY |
|  |  |  | 16N | 91W | 3 | ALL | Carbon | WY |
|  |  |  | 16N | 91W | 4 | ALL | Carbon | WY |
|  |  |  | 16N | 91W | 5 | ALL | Carbon | WY |
|  |  |  | 16N | 91W | 8 | ALL | Carbon | WY |
|  |  |  | 16N | 91W | 9 | ALL | Carbon | WY |
|  |  |  | 16N | 91W | 10 | ALL | Carbon | WY |
|  |  |  | 16N | 91W | 11 | ALL | Carbon | WY |
|  |  |  | 16N | 91W | 12 | ALL | Carbon | WY |
|  |  |  | 16N | 91W | 13 | ALL | Carbon | WY |
|  |  |  | 16N | 91W | 14 | ALL | Carbon | WY |
|  |  |  | 16N | 91W | 15 | ALL | Carbon | WY |
|  |  |  | 16N | 91W | 16 | ALL | Carbon | WY |
|  |  |  | 16N | 91W | 17 | ALL | Carbon | WY |
|  |  |  | 16N | 91W | 18 | S2 | Carbon | WY |
|  |  |  | 16N | 91W | 19 | ALL | Carbon | WY |
|  |  |  | 16N | 91W | 20 | ALL | Carbon | WY |
|  |  |  | 16N | 91W | 21 | ALL | Carbon | WY |
|  |  |  | 16N | 91W | 22 | ALL | Carbon | WY |
|  |  |  | 16N | 91W | 23 | ALL | Carbon | WY |
|  |  |  | 16N | 91W | 24 | W2, NE | Carbon | WY |
|  |  |  | 16N | 91W | 25 | W2 | Carbon | WY |
|  |  |  | 16N | 91W | 26 | ALL | Carbon | WY |
|  |  |  | 16N | 91W | 27 | ALL | Carbon | WY |
|  |  |  | 16N | 91W | 28 | ALL | Carbon | WY |
|  |  |  | 16N | 91W | 29 | ALL | Carbon | WY |
|  |  |  | 17N | 91W | 26 | SW | Carbon | WY |
|  |  |  | 17N | 91W | 34 | Lots 1-2, 7-16 | Carbon | WY |
|  |  |  | 17N | 91W | 35 | ALL | Carbon | WY |
|  |  |  | 17N | 91W | 36 | ALL | Carbon | WY |

| Unit Information | Serial Number | Gross Acres | TWP | RNG | SECTION | QTR/QTR | County | State |
|---|---|---|---|---|---|---|---|---|

9/16/2014 12:24 PM
Page:44 of 45
0956736 Bk:1258 Pg:283 Carbon WY Fees:$417.00  User:SP

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Spyglass Hill (CBNG) Unit - Sun Dog (CBM) Participating Area | WYW-152954X | 10,851.08 | 16N | 91W | 2 Lots 12-17, 20-22, N2SW, S' | Carbon | WY |
| Merged into Spyglass Hill effective 1 May 2013 | | | 16N | 91W | 3 ALL | Carbon | WY |
| | | | 16N | 91W | 4 SW, Lots 11-22, SE | Carbon | WY |
| Operator: Warren E&P Inc. | | | 16N | 91W | 5 ALL | Carbon | WY |
| PA Effective 27 April 2002 | | | 16N | 91W | 8 ALL | Carbon | WY |
| 11th Revision (Current): 1 Nov 2008 | | | 16N | 91W | 9 ALL | Carbon | WY |
| | | | 16N | 91W | 10 W2, N2NE | Carbon | WY |
| | | | 16N | 91W | 11 NWNW | Carbon | WY |
| | | | 16N | 91W | 14 W2SE | Carbon | WY |
| | | | 16N | 91W | 15 W2, S2NE, SE | Carbon | WY |
| | | | 16N | 91W | 16 ALL | Carbon | WY |
| | | | 16N | 91W | 17 ALL | Carbon | WY |
| | | | 16N | 91W | 18 E2SW, Lots 7-8, SE | Carbon | WY |
| | | | 16N | 91W | 19 NE, Lots 5-8, E2W2, SE | Carbon | WY |
| | | | 16N | 91W | 20 ALL | Carbon | WY |
| | | | 16N | 91W | 21 ALL 50 | Carbon | WY |
| | | | 16N | 91W | 22 N2N2, SWNW, NWSW | Carbon | WY |
| | | | 16N | 91W | 26 SW | Carbon | WY |
| | | | 16N | 91W | 28 NW | Carbon | WY |
| | | | 16N | 91W | 29 N2 | Carbon | WY |
| | | | 16N | 91W | 34 Lots 1,4, 7-16 | Carbon | WY |
| | | | 16N | 91W | 35 ALL | Carbon | WY |
| | | | 16N | 91W | 36 NW, NWSW | Carbon | WY |

| Unit Information | Serial Number | Gross Acres | TWP | RNG | SECTION | QTR/QTR | County | State |
|---|---|---|---|---|---|---|---|---|
| Cow Creek Unit | WYW-109471X | 1,572.69 | 16N | 91W | 6 | Lot 27, SESW | Carbon | WY |
| | | | 16N | 91W | 7 | Lots 5-8, E2NW, NESW | Carbon | WY |
| Operator: Escalera Resources Co. | | | 16N | 91W | 18 | Lot 5 | Carbon | WY |
| Effective: 6 Aug 1959 | | | 16N | 92W | 1 | SESE | Carbon | WY |
| | | | 16N | 92W | 11 | E2SE | Carbon | WY |
| | | | 16N | 92W | 12 | E2, E2W2, SWNW, SW | Carbon | WY |
| | | | 16N | 92W | 13 | N2, N2SW, SESW, NWSE | Carbon | WY |
| | | | 16N | 92W | 14 | NENE | Carbon | WY |

| Unit Information | Serial Number | Gross Acres | TWP | RNG | SECTION | QTR/QTR | County | State |
|---|---|---|---|---|---|---|---|---|
| The Mesa Unit | WYW-109598X | 2400 | 32N | 109W | 5 | SWSW | Sublette | WY |
| | | | 32N | 109W | 6 | Lot 8, S2SE | Sublette | WY |
| Operator: QEP Energy Company | | | 32N | 109W | 7 | Lots 1 & 6, NE, N2SE | Sublette | WY |

91

| | Serial Number | Gross Acres | TWP | RNG | SECTION | QTR/QTR | County | State |
|---|---|---|---|---|---|---|---|---|
| Effective: 20 Oct 1980 | | | 32N | 109W | 8 | W2NW, NWSW | Sublette | WY |
| | | | 32N | 109W | 9 | S2SW, SWSE | Sublette | WY |
| | | | 32N | 109W | 16 | N2, SW, N2SE, SWSE | Sublette | WY |
| | | | 32N | 109W | 17 | SENE, NESE | Sublette | WY |
| | | | 33N | 109W | 19 | E2E2 | Sublette | WY |
| | | | 33N | 109W | 20 | All | Sublette | WY |
| | | | 33N | 109W | 29 | N2N2 | Sublette | WY |
| | | | 33N | 109W | 30 | NENE | Sublette | WY |

| Unit Information | Serial Number | Gross Acres | TWP | RNG | SECTION | QTR/QTR | County | State |
|---|---|---|---|---|---|---|---|---|
| The Mesa Unit - Lance Pool PA "B" | WYW-109598A | 800 | 32N | 109W | 9 | S2SW, SWSE | Sublette | WY |
| Operator: QEP Energy Company | | | 32N | 109W | 16 | N2, SW, N2SE, SWSE | Sublette | WY |
| Effective: 5 May 2003 | | | 32N | 109W | 17 | SENE, NESE | Sublette | WY |

| Unit Information | Serial Number | Gross Acres | TWP | RNG | SECTION | QTR/QTR | County | State |
|---|---|---|---|---|---|---|---|---|
| The Mesa Unit - Lance Pool PA "C" | WYW-109598B | 1000 | 33N | 109W | 19 | E2E2 | Sublette | WY |
| Operator: QEP Energy Company | | | 33N | 109W | 20 | ALL | Sublette | WY |
| Effective: 1 May 2003 | | | 33N | 109W | 29 | N2N2 | Sublette | WY |
| | | | 33N | 109W | 30 | NENE | Sublette | WY |

| Unit Information | Serial Number | Gross Acres | TWP | RNG | SECTION | QTR/QTR | County | State |
|---|---|---|---|---|---|---|---|---|
| The Mesa Unit - Lance Pool PA "A" | WYW-109598C | 600 | 32N | 109W | 5 | SWSW | Sublette | WY |
| Operator: QEP Energy Company | | | 32N | 109W | 6 | Lot 8, S2SE | Sublette | WY |
| Effective: 1 May 2003 | | | 32N | 109W | 7 | Lots 1 & 6, NE, N2SE | Sublette | WY |
| | | | 32N | 109W | 8 | W2NW, NWSW | Sublette | WY |

**END OF EXHIBIT A**

9/16/2014 12:24 PM
Page:45 of 45
0956736 Bk:1258 Pg:283 Carbon WY Fees:$417.00 User:SP

# Exhibit B to Complaint

EXHIBIT A
TO
## MORTGAGE, SECURITY AGREEMENT, FINANCING STATEMENT, FIXTURE FILING AND ASSIGNMENT OF PRODUCTION

The designation "Working Interest" or "WI" or "GWI" when used in this Exhibit means an interest owned in an oil, gas, and mineral lease that determines the cost-bearing percentage of the owner of such interest. The designation "Net Revenue Interest" or "NRI" or "NRIO" or "NRIG" means that portion of the production attributable to the owner of a working interest after deduction for all royalty burdens, overriding royalty burdens or other burdens on production, except severance, production, and other similar taxes. The designation "Overriding Royalty Interest" or "ORRI" means an interest in production which is free of any obligation for the expense of exploration, development, and production, bearing only its pro rata share of severance, production, and other similar taxes and, in instances where the document creating the overriding royalty interest so provides, costs associated with compression, dehydration, other treating or processing, or transportation of production of oil, gas, or other minerals relating to the marketing of such production. The designation "Royalty Interest" or "RI" means an interest in production which results from an ownership in the mineral fee estate or royalty estate in the relevant land and which is free of any obligation for the expense of exploration, development, and production, bearing only its pro rata share of severance, production, and other similar taxes and, in instances where the document creating the royalty interest so provides, costs associated with compression, dehydration, other treating or processing or transportation of production of oil, gas, or other minerals relating to the marketing of such production. Each amount set forth as "Working Interest" or "WI" or "GWI" or "Net Revenue Interest" or "NRI" or "NRIO" or "NRIG" is the Mortgagor's interest after giving full effect to, among other things, all Liens permitted by the Credit Agreement and after giving full effect to the agreements or instruments set forth in this Exhibit A and any other instruments or agreements affecting the Mortgagor's ownership of the Hydrocarbons.

Any reference in this Exhibit A to wells or units is for warranty of interest, administrative convenience, and identification and shall not limit or restrict the right, title, interest, or Properties covered by this Mortgage and shall not be deemed to ratify or create any rights in third parties. All right, title, and interest of the Mortgagor in the Properties described herein and in Exhibit A are and shall be subject to this Mortgage, regardless of the presence of any units or wells not described herein.

The reference to book or volume and page and/or entry herein and in Exhibit A refer to the recording location of each respective Realty Collateral described herein and in Exhibit A in the county where the land covered by the Realty Collateral is located.

Exhibit A to Mortgage

<u>WYOMING</u>

**Campbell County**

<u>Rabourn</u>
<u>T50N, R69W, 6th PM</u>
Section 5: Lot 4, S2NW, W2SE, SW4
Section 8: NENW

<u>Wolf Draw Unit</u>
<u>T52N, R69W, 6th PM</u>
Section 13: Lot 16
Section 24: Lot 1

**Carbon County**

<u>First Revision of the Mesaverde (CBNG) Participating Area "A" (Grace Point)</u>
<u>T15N R91W, 6th PM</u>
Section 4: ALL
Section 5: ALL
Section 6: E2, SWSE
Section 7: NENW, E2SE, N2NE, SENE
Section 8: ALL
Section 9: W2, W2E2. NENE, E2SE
Section 10: SWSW
Section 15: SW, W2NW
Section 16: ALL
Section 17: NE, N2SE, N2NW, SENW, NESW
Section 21: NE
Section 22: N2NW, SWNW
<u>T16N R91W, 6th PM</u>
Section 28: SW, W2SE
Section 29: S2
Section 32: ALL
Section 33: W2
<u>Creston</u>
<u>T18N R91W, 6th PM</u>
Section 9: ALL

Exhibit A to Mortgage

**Crook County**

    <u>Wolf Draw Unit</u>
        <u>T52N, R68W, 6th PM</u>
            Section 18: Lots 10-17
            Section 19: Lots 6-8


**Fremont County**

    <u>Madden Deep Unit (Long Butte/Big Horn)</u>
        <u>T38N, R91W, 6th PM</u>
            Section 1: All
            Section 2: All
            Section 3: All
            Section 4: All
            Section 5: All
            Section 6: All
            Section 7: Lots 1, 2, 5, 6, NE4, E2NW4, NESE
            Section 8: N2, N2S2
            Section 9: N2NW4, SWNW, NWSW
            Section 10: NENW, N2NE, SENE
            Section 11: N2, NESW, N2SE, SESE
        <u>T38N, R92W, 6th PM</u>
            Section 1: Lots 1-11, SWNE, SENW, NWSE
            Section 30: All
            Section 31: All
        <u>T39N, R91W, 6th PM</u>
            Section 28: All
            Section 29: All
            Section 30: Lots 3-8, E2, E2SW, SENW
            Section 31: All
            Section 32: All
            Section 33: All
        <u>T39N, R92W, 6th PM</u>
            Section 25: S2SE, NESE, SESW
            Section 35: E2SE, SENE
            Section 36: All

Lincoln County

    <u>Seven Mile Wash</u>

        <u>T21N R112W, 6th PM</u>

            Section: 8: SWNE, W2, SE

            Section 10: ALL

            Section 14: ALL

            Section 18: E2W2, E2, Lots 5-8

            Section 22: N2NE, SENE

    <u>Hailstone Unit</u>

        <u>T21N R112W, 6th PM</u>

            Section 7: E2

    <u>Whiskey Buttes Unit</u>

        <u>T21N R111W, 6th PM</u>

            Section 6: S2NE, SENW, E2SW, N2SE, SWSE, Lots 8-14

        <u>T21N R112W, 6th PM</u>

            Section 18: E2, E2W2

Natrona County

    <u>Waltman</u>

        <u>T36N. R87W, 6th PM</u>

            Section 24: S2S2

            Section 25: N2, N2S2

Natrona County

    <u>Waltman</u>

        <u>T36N. R87W, 6th PM</u>

            Section 24: S2S2

            Section 25: N2, N2S2

**Sweetwater County**

<u>Four Mile Gulch</u>

T23N R110W, 6th PM

Section 1: S2N2, SE, Lots 5-8
Section 4: S2N2, S2, Lots 5-8
Section 5: SESW, S2NE, SE, Lots 5-6
Section 6: S2NE, SENW, E2SW, SE, Lots 8-14
Section 8: ALL
Section 9: NW, N2SW, SWSW
Section 12: E2
Section 13: ALL
Section 15: SW, NESE, S2SE

T24N R110W, 6th PM

Section 32: N2, Lots 1-12

<u>Marianne</u>

T20N R103W, 6th PM

Section 11: W2, SE4
Section 13: W2, SE4
Section 14: NENW, S2NW, SW, E2
Section 18: Lots 1-4, E2, E2W2
Section 23: W2, SE4
Section 24: ALL
Section 25: W2, SE4

<u>Haven Unit</u>

T23N R110W, 6th PM

Section 27: ALL
Section 28: S2
Section 33: ALL
Section 34: NE, S2

Exhibit A to Mortgage

# Exhibit C to Complaint

**Execution Version**

7/30/2015 1:34 PM
Page:1 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

## MORTGAGE, SECURITY AGREEMENT, FINANCING STATEMENT, FIXTURE FILING AND ASSIGNMENT OF RENTS AND LEASES

THIS INSTRUMENT CONTAINS AFTER-ACQUIRED PROPERTY AND FUTURE ADVANCE PROVISIONS. THIS INSTRUMENT CONTAINS AN ASSIGNMENT OF RENTS AND LEASES. THIS INSTRUMENT COVERS THE INTEREST OF MORTGAGOR IN FIXTURES. THIS FINANCING STATEMENT IS TO BE FILED FOR RECORD, AMONG OTHER PLACES, IN THE REAL ESTATE RECORDS. PRODUCTS OF THE COLLATERAL ARE ALSO COVERED.

THIS INSTRUMENT GRANTS A SECURITY INTEREST BY A TRANSMITTING UTILITY. THIS FINANCING STATEMENT IS TO BE FILED FOR RECORD, AMONG OTHER PLACES, IN THE MORTGAGE AND UCC RECORDS. THIS INSTRUMENT AND THE LIENS CREATED PURSUANT HERETO COVER, AMONG OTHER THINGS, PRODUCTS AND PROCEEDS.

**A POWER OF SALE HAS BEEN GRANTED IN THIS INSTRUMENT. A POWER OF SALE MAY ALLOW THE MORTGAGEE TO TAKE THE COLLATERAL AND SELL IT WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON DEFAULT BY MORTGAGOR UNDER THIS INSTRUMENT**

FROM

EASTERN WASHAKIE MIDSTREAM LLC
(Mortgagor, Debtor and Grantor)

TO AND FOR THE BENEFIT OF,

IN THE CASE OF NON-FEDERAL COLLATERAL,

SOCIÉTÉ GÉNÉRALE, AS ADMINISTRATIVE AGENT

AND, IN THE CASE OF FEDERAL COLLATERAL,

SOCIÉTÉ GÉNÉRALE FINANCIAL CORPORATION, AS COLLATERAL AGENT FOR THE ADMINISTRATIVE AGENT
(collectively as Mortgagee, Secured Party and Grantee)

July 21, 2015

For purposes of filing this Mortgage as a financing statement, Eastern Washakie Midstream LLC is a limited liability company organized under the laws of the State of Wyoming, its organizational number is 2006-000508135 and the mailing address of the Mortgagor is 1675 Broadway, Suite 2200, Denver, Colorado 80202, Attention: Adam Fenster; Facsimile: 303-

Wyoming

7/30/2015 1:34 PM
Page:2 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

794-8451. The mailing address of the Mortgagee is 1111 Bagby Street, Suite 2020, Houston, Texas 77002, Attention: Elena Robciuc, Facsimile: 713-650-0824.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This instrument, prepared by Trevor Wommack, Bracewell & Giuliani LLP, 711 Louisiana, South Tower Pennzoil Place, Suite 2300, Houston, Texas 77002, (713) 221-1444, contains after-acquired property provisions and covers future advances and proceeds to the fullest extent allowed by applicable law.

ATTENTION RECORDING OFFICER: This instrument is a mortgage of both real and personal property and is, among other things, a Security Agreement and Financing Statement under the Uniform Commercial Code in effect in the State of Wyoming. This instrument creates a lien on rights in or relating to lands of the Mortgagor which are described in Exhibit A hereto or in documents described in such Exhibit A.

RECORDED DOCUMENT SHOULD BE RETURNED TO:

Return acknowledgment to:

711 Louisian ███████ ⭐ ███████ 2300

Capitol Services, Inc.
P.O. Box 1831    Austin, TX 78767
800/345-4647

7/30/2015 1:34 PM
Page:3 of 33
0960281 Bk:1274 Pg:142 Carbon WY  Fees:$133.00  User:SP

# MORTGAGE, SECURITY AGREEMENT, FINANCING STATEMENT, FIXTURE FILING AND ASSIGNMENT OF RENTS AND LEASES

THIS MORTGAGE, SECURITY AGREEMENT, FINANCING STATEMENT, FIXTURE FILING AND ASSIGNMENT OF RENTS AND LEASES (this "Mortgage") dated effective as of the 21st day of July 2015 (the "Effective Date"), is executed and delivered by EASTERN WASHAKIE MIDSTREAM LLC, a Wyoming limited liability company (the "Mortgagor"), to and in favor of, in the case of Non-Federal Collateral, SOCIÉTÉ GÉNÉRALE, in its capacity as the administrative agent under the Credit Agreement (as hereinafter defined) (the "Non-Federal Collateral Mortgagee"), and in the case of Federal Collateral, SOCIÉTÉ GÉNÉRALE FINANCIAL CORPORATION, in its capacity as collateral agent for the Administrative Agent (the "Federal Collateral Mortgagee" and, together with the Non-Federal Collateral Mortgagee, the "Mortgagee") for the benefit of the Lender Parties (as hereinafter defined). The addresses of the Mortgagor and the Mortgagee appear in Section 7.12 of this Mortgage.

## RECITALS

A.    This Mortgage is executed in connection with, and pursuant to the terms of, that certain Credit Agreement dated as of August 29, 2014 (as amended, modified, restated or supplemented from time to time, the "Credit Agreement") among the Escalera Resources Co., a Maryland corporation, as borrower (in such capacity, the "Borrower"), the lenders party thereto from time to time (the "Lenders"), and Société Générale as administrative agent for the Lenders (the "Administrative Agent") and as issuer (the "Issuer").

B.    In connection with the Credit Agreement, the Mortgagor entered into the Guaranty and Collateral Agreement dated as of August 29, 2014 (as amended, modified, restated or supplemented from time to time, the "Guaranty") among the Mortgagor, the Borrower, the other grantors party thereto and the Administrative Agent, pursuant to which the Mortgagor guaranteed the payment and performance of the Obligations.

C.    Borrower, Mortgagor or any of their Subsidiaries may from time to time enter into one or more Hedge Agreements (as defined in the Credit Agreement) with a Lender or an Affiliate of a Lender (together with the Mortgagee, the Lenders, the Administrative Agent, the Issuer and other holders of Obligations as defined in the Credit Agreement, collectively referred to herein as the "Lender Parties").

C.    It is a requirement under the Credit Agreement that Mortgagor execute and deliver this Mortgage.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Mortgagor and Mortgagee hereby agree as follows:

7/30/2015 1:34 PM
Page:4 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

# ARTICLE I

## Definitions

1.1    "Collateral" means the Realty Collateral, Personalty Collateral and Fixture Collateral.

1.2    "Contracts" means all contracts and agreements now in effect, or hereafter entered into by Mortgagor, Mortgagor's predecessors in interest, or by any other parties to the extent that Mortgagor has any right or interest thereto or thereunder for the sale, purchase, marketing, exchange, processing, treating, compressing, handling, storing, transporting, transmitting or gathering of Hydrocarbons, to the extent such contracts and agreements cover, include or relate to all or any portion of the Lands and the Systems, together with all exhibits, schedules and other attachments to any of such contracts, as the same may be amended, supplemented or otherwise modified or replaced from time to time.

1.3    "Excluded Structures" means any Building (as defined in the applicable Flood Insurance Regulation) or Manufactured (Mobile) Home (as defined in the applicable Flood Insurance Regulation) (together, any "Structure") unless (a) a flood determination certificate covering the real property on which such Structure is located has been obtained by the Administrative Agent and (b) if such Structure is located in a Special Flood Hazard Area (as defined in the applicable Flood Insurance Regulation), such Structure is covered by flood insurance obtained by Mortgagor in an amount as required by the applicable Flood Insurance Regulation. As used herein, "Flood Insurance Regulations" shall mean (i) the National Flood Insurance Act of 1968 as now or hereafter in effect or any successor statute thereto, (ii) the Flood Disaster Protection Act of 1973 as now or hereafter in effect or any successor statute thereto, (iii) the National Flood Insurance Reform Act of 1994 (amending 42 USC 4001, et seq.), as the same may be amended or recodified from time to time, and (iv) the Flood Insurance Reform Act of 2004 and any regulations promulgated thereunder.

1.4    "Event of Default" shall have the meaning set forth in Article V hereof.

1.5    "Federal Collateral" means Collateral that, pursuant to the Mineral Leasing Act of 1920, 30 U.S.C. § § 181, et seq. and the regulations promulgated thereunder, or any other applicable law, may only be acquired or held by citizens of the United States, associations of such citizens, any corporation organized under the laws of the United States or of any state or territory thereof, or municipalities.

1.6    "Fixture Collateral" means all of the Mortgagor's right, title and interest now owned or hereafter acquired, in and to all Fixture Operating Equipment and all proceeds, products, renewals, increases, profits, substitutions, replacements, additions, amendments and accessions thereof, thereto or therefor.    For purposes of this Mortgage, the Fixture Collateral shall not include the Excluded Structures.

1.7    "Fixture Operating Equipment" means any of the items described in the first sentence of the definition of "Operating Equipment" set forth below and which are incorporated into realty or structures or improvements located therein or thereon in such a manner that they no

7/30/2015 1:34 PM
Page:5 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

longer remain personalty but constitute fixtures under the laws of the state in which such equipment is located.

1.8    "Hydrocarbons" means oil, gas, coal seam gas, casinghead gas, drip gasoline, natural gasoline, condensate, distillate, and all other liquid and gaseous hydrocarbons produced or to be produced in conjunction therewith from a well bore and all products, by-products, and other substances derived therefrom or the processing thereof, and all other minerals and substances produced in conjunction with such substances, including sulfur, geothermal steam, water, carbon dioxide, helium, and any and all minerals, ores, or substances of value and the products and proceeds therefrom, and shall include "as-extracted" collateral as defined in the applicable Uniform Commercial Code.

1.9    "Maturity Date" has the meaning assigned such term in the Credit Agreement.

1.10    "Non-Federal Collateral" means any Collateral that is not Federal Collateral.

1.11    "Note" means the "Note" as that term is defined in the Credit Agreement.

1.12    "Obligations" means:

(a)    The "Obligations", as that term is defined in the Credit Agreement, including all indebtedness evidenced by the Notes, whether fixed or contingent, joint or several, direct or indirect, primary or secondary, and regardless of how created or evidenced;

(b)    All sums advanced or costs or expenses incurred by the Mortgagee or any of the other Lender Parties, which are made or incurred pursuant to, or allowed by, the terms of this Mortgage plus interest thereon from the date of the borrowing or incurrence until reimbursement of the Mortgagee or such Lender Party charged at the Reimbursement Rate;

(c)    All future advances or other value, of whatever class or for whatever purpose, at any time hereafter made or given by the Mortgagee or any of the other Lender Parties to the Mortgagor, the Borrower or any of its Subsidiaries under or pursuant to any Loan Document, whether or not the advances or value are given pursuant to a commitment, whether or not the advances or value are presently contemplated by the parties hereto, and whether or not the Mortgagor is indebted to any Lender Party at the time of such events; and

(d)    All renewals, extensions, modifications, amendments, rearrangements and substitutions of all or any part of the above whether or not the Mortgagor executes any agreement or instrument.

Notwithstanding anything herein to the contrary, "Obligations" shall not include any "Excluded Swap Obligations", as that term is defined in the Credit Agreement.

1.13    "Lands" means, and includes, all right, title and interest of the Mortgagor in and to the land, interests in land, Leases, easements, Servitudes, rights of way, permits, licenses and all other interests (a) which are appurtenant to real property that have been granted to the Mortgagor in and by the instruments and documents which are described on Exhibit A attached

7/30/2015 1:34 PM
Page:6 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

hereto, incorporated herein, and made a part hereof, or (b) the descriptions of which are contained on said Exhibit A, which descriptions are incorporated herein and made a part hereto.

1.14    "Leases" means any and all leases or subleases covering the Lands or the Systems or any portion thereof now or hereafter existing or entered into.

1.15    "Operating Equipment" means all of Mortgagor's right, title and interest, whether now owned or hereafter acquired, in and to all surface or subsurface machinery, equipment, facilities, supplies, or other tangible personal property, including oil wells, gas wells, water wells, injection wells, gas processing plants, casing, tubing, rods, pumps, pumping units and engines, Christmas trees, derricks, separators, gun barrels, flow lines, tanks, tank batteries, gas systems (for gathering, treating, compression, disposal or injection), chemicals, solutions, water systems (for treating, disposal and injection), pipe, pipelines, meters, apparatus, boilers, compressors, liquid extractors, connectors, valves, fittings, power plants, poles, lines, cables, wires, dehydration units, transformers, starters and controllers, machine shops, tools, machinery and parts, storage yards and equipment stored therein, buildings and camps, telegraph, telephone and other communication systems, roads, loading docks, loading racks and shipping facilities, fixtures, and other appurtenances, appliances and property of every kind and character, movable or immovable, together with all improvements, betterments and additions, accessions and attachments thereto and replacements thereof, in each case wherever located and to the extent any of such tangible personal property is used in connection with or associated with the ownership and/or operation of the Lands or the Systems. Operating Equipment shall not include any items incorporated into realty or structures or improvements located therein or thereon in such a manner that they no longer remain personalty under the laws of the state in which such equipment is located.

1.16    "Permitted Liens" means Liens permitted by Section 7.2.2 of the Credit Agreement.

1.17    "Personalty Collateral" means all of Mortgagor's right, title and interest, whether now owned or hereafter acquired, in and to (a) all Operating Equipment, (b) all accounts, contract rights and general intangibles attributable to the Systems, including all Liens securing the same, whether now existing or hereafter arising with respect to the Systems, (c) all accounts, contract rights and general intangibles attributable to the Lands, including all Liens securing the same, whether now existing or hereafter arising, (e) all proceeds and products of the Realty Collateral, (f) all information concerning the Lands and the Systems, including abstracts of title, title opinions, geological and geophysical information and logs, lease files, well files, and other books and records (including computerized records and data), (g) any options to acquire any Realty Collateral, and (h) all proceeds, products, renewals, increases, profits, substitutions, replacements, additions, amendments and accessions of, to or for any of the foregoing.

1.18    "Property" means any property of any kind, whether real, personal, or mixed and whether tangible or intangible.

1.19    "Realty Collateral" means all of Mortgagor's right, title and interest, whether now owned or hereafter acquired, in and to the Lands and the Systems and all improvements and other constructions, including the Operating Equipment, now or hereafter located on such Lands

7/30/2015 1:34 PM
Page:7 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

or in connection with such Systems to the extent any such improvements and other constructions should constitute or be deemed to constitute real property for the purposes of North Dakota law, including any buildings, platforms, structures, towers, rigs or other immovable property or component part thereof.

1.20   "Refined Products" means gasoline, diesel fuel, jet fuel, liquid petroleum gases, asphalt and asphalt products, and all other products refined, separated, fractionated, settled, and dehydrated from any Hydrocarbon or other petroleum product.

1.21   "Rents" means all of Mortgagor's right, title and interest, whether now owned or hereafter acquired, in and to all rents, issues, profits, revenues, royalties, income, and other benefits derived from any leases or other transfers of any other part of the Collateral.

1.22   "Servitudes" means all of Mortgagor's right, title and interest, whether now owned or hereafter acquired, in and to any and all land use agreements, permits, servitudes, rights of way, easements, licenses, Leases and similar devices, whether now existing or hereafter arising, for the construction, maintenance and operation of the Systems.

1.23   "Systems" shall mean all of Mortgagor's right, title and interest, whether now owned or hereafter acquired, in and to all pipeline, refrigeration, processing, treating, gathering, storage, exchange, handling, transmitting, distributing, or transporting systems, plants, terminals and facilities and located on all or any portion of the Lands, including without limitation all of the following properties: (i) the pipelines, systems, plants, terminals and facilities described in Exhibit A, and (ii) all of the accessories or component parts thereto, whether or not particularly described herein, including without limitation, (A) all equipment, facilities, compressors, lengths of pipe and any and all other types of pipe actually employed in the construction of the systems, plants, terminals and facilities, including all loops, laterals, fittings, connections, valves, mains, meter's, dehydrators, scrubbers, controls, tubing, casings surrounding any piping, casing seals, casing insulators and casing vents, and all joints, connections or flanges, rods, gauges and all compressor, tank and pump sites, pipe, piping, pipe racks, truck racks, pumps, engines, compressors, block valves, heaters, coolers, filters, refrigerators, dehydrators, extractors, measurement and pigging facilities, tanks, storage tanks, loading racks, scales, markers, including caution signs, aerial markers, navigable waterway marks, mile posts, and ground markers, and all other types of markers, cathodic protection test stations, regulators, starters, motors, engines, housing, leaders, orifices, skid-mounted equipment, exchangers, regenerators, reboilers, refrigeration equipment, separators, meters, valves, block valves and generators and all other natural gas and all surface or underground facilities, and all fences, and all pressure gauges and other gauges, and all interconnections with other pipelines, and all side valves, blowdown valves, mainline valves, and all test leads, (C) all materials or gas products or by-products processing, treating, fractionating, refuting, refrigeration, gas gathering, transporting, storing, delivering and/or marketing equipment, (D) all other items or types of equipment and associated or component parts or supplies, including any and all machinery, tools, blueprints, plans, furniture, furnishings, fixtures and other goods of Mortgagor, (E) all spare parts, replacements or substitutions of any of the foregoing and all other appurtenances of the Systems or their above-described associated or component parts, whether as a result of repair, replacement or addition and whether attached to, incorporated with the Systems or used in connection with the Systems whether or not the same is situated in, on or under all or any portion of the Lands, (F) all other

-7-

7/30/2015 1:34 PM
Page:8 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

personal property and fixtures of every kind and character on, incident, appurtenant or belonging to and used in connection with the interest of Mortgagor in all or any portion of the Lands or the Systems, and (G) all proceeds and products of any of the foregoing.

1.24    "Reimbursement Rate" means a per annum rate equal to the lesser of (a) the maximum lawful rate and (b) the LIBO Rate in effect from time to time plus the Applicable Margin for LIBO Rate Loans in effect during an Event of Default.

1.25    "Security Termination" means such time at which each of the following events shall have occurred on or prior to such time: (a) termination of the Credit Agreement, (b) termination of all Hedge Transactions with Lender Parties (other than Hedge Transactions with any Lender Parties with respect to which other arrangements satisfactory to such Lender Parties and the Borrower have been made), (c) termination of all Letters of Credit (other than Letters of Credit as to which other arrangements satisfactory to the Administrative Agent and the Issuer shall have been made), and (d) the payment in full of all outstanding Borrowings, Letter of Credit Liabilities (other than Letters of Credit as to which other arrangements satisfactory to the Administrative Agent and the Issuer shall have been made) and all other Obligations (other than contingent indemnification obligations) payable under any other Loan Document.

1.26    All other capitalized terms defined in the Credit Agreement which are used in this Mortgage and which are not otherwise defined herein shall have the meanings assigned to such terms in the Credit Agreement. All meanings to defined terms, unless otherwise indicated, are to be equally applicable to both the singular and plural forms of the terms defined.  Article, Section, Schedule, and Exhibit references are to Articles and Sections of and Schedules and Exhibits to this Mortgage, unless otherwise specified.  All references to instruments, documents, contracts, and agreements are references to such instruments, documents, contracts, and agreements as the same may be amended, supplemented, and otherwise modified from time to time, unless otherwise specified.  The words "hereof", "herein" and "hereunder" and words of similar import when used in this Mortgage shall refer to this Mortgage as a whole and not to any particular provision of this Mortgage.  As used herein, the term "including" means "including, without limitation".

## ARTICLE II

## Creation of Security

2.1    **Conveyance and Grant of Lien**.  In consideration of the advances or extensions by the Lender Parties to Borrower of the funds or credit constituting the Obligations (including the making of the Loans and the issuing of the Letters of Credit), and in further consideration of the mutual covenants contained herein, Mortgagor, by this Mortgage (a) does hereby GRANT AND MORTGAGE AND WARRANT to the Federal Collateral Mortgagee with a general warranty of title, for the uses, purposes and conditions hereinafter set forth, all of its right, title and interest in and to the Federal Collateral, WITH POWER OF SALE and (b) does hereby GRANT AND MORTGAGE AND WARRANT to the Non-Federal Collateral Mortgagee with a general warranty of title, for the uses, purposes and conditions hereinafter set forth, all of its right, title and interest in and to the Non-Federal Collateral, WITH POWER OF SALE, to secure the payment of the Notes payable in full on or before the Stated Maturity Date in addition to the

7/30/2015 1:34 PM
Page:9 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

other Obligations as defined in the Credit Agreement for the benefit of the Mortgagee and the ratable benefit of the Lender Parties. Notwithstanding any provision in this Mortgage to the contrary, in no event are any Excluded Structures encumbered by this Mortgage.

TO HAVE AND TO HOLD the Realty Collateral, the Personalty Collateral and the Fixture Collateral unto the Mortgagee and its successors and assigns forever for the benefit of the Mortgagee on behalf of the Lender Parties, together with all and singular the rights, hereditaments and appurtenances thereto in anywise appertaining or belonging, to secure payment of the Obligations and the performance of the covenants of the Mortgagor contained in this Mortgage. The Mortgagor does hereby bind itself, its successors and permitted assigns, to warrant and forever defend all and singular the Realty Collateral, the Personalty Collateral and the Fixture Collateral unto the Mortgagee and its successors and assigns, against every Person whomsoever lawfully claiming or to claim the same, or any part thereof; provided, however, that none of the Mortgagee or the Lender Parties shall be liable in any respect for the performance of any covenant or obligation of the Mortgagor in respect of the Collateral. It is the Mortgagor's intention that this Mortgage cover the Mortgagor's entire interest in the Lands and Systems.

2.2   **Security Interest**. For the same consideration and to further secure the Obligations, the Mortgagor hereby grants to the Mortgagee for its benefit and the ratable benefit of the other Lender Parties a security interest in and to the Collateral.

2.3   **Assignment of Liens and Security Interests**. For the same consideration and to further secure the Obligations, the Mortgagor hereby assigns and conveys to the Mortgagee for its benefit and the benefit of the other Lender Parties any security interests held by the Mortgagor arising under the Wyoming Uniform Commercial Code-Secured Transactions (Wyo. Stat. 34.1-9-101 et seq., as amended from time to time) and the liens granted to the Mortgagor.

2.4   **AGGREGATE UNPAID PRINCIPAL AMOUNT. THE AGGREGATE UNPAID PRINCIPAL AMOUNT OF OBLIGATIONS AND BORROWINGS SECURED HEREBY OUTSTANDING AT ANY PARTICULAR TIME (AFTER HAVING GIVEN EFFECT TO ALL BORROWINGS AND ALL REPAYMENTS MADE PRIOR TO SUCH TIME) SHALL NOT AGGREGATE AN UNPAID PRINCIPAL AMOUNT IN EXCESS OF TWO HUNDRED FIFTY MILLION AND NO/100 DOLLARS ($250,000,000.00).**

2.5   **Mineral Leasing Act**. It is the specific intent of the parties hereto to fully comply with applicable law concerning Federal oil and gas leases. The parties hereto in good faith believe that a grant of a mortgage as security for the repayment of the Obligations is not the grant of an "interest" (as such term is defined and used in 43 C.F.R. § 3000.0-5(l)) in Federal oil and gas leases to the Mortgagee or any Lender Party. In the event that the grant of this Mortgage as security for the repayment of the Obligations is determined to grant such an "interest" in Federal oil and gas leases, then such grant shall be deemed to be made to, and shall inure to the benefit of, only those parties that may lawfully hold an interest in Federal oil and gas leases pursuant to the Mineral Leasing Act of 1920, 30 U.S.C. §§ 181 et seq. and the regulations promulgated thereunder, including 43 C.F.R. Subparts 3102 and 3106.

7/30/2015 1:34 PM
Page:10 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00  User:SP

# ARTICLE III

## Assignment and Proceeds from Rents and Leases

3.1    **Assignment**.

 (a) In order to further secure the Obligations, the Mortgagor has assigned, transferred, conveyed and delivered and does hereby assign, transfer, convey, and set over to Mortgagee all of Mortgagor's estate, right, title and interest in, to and under the Leases where the Mortgagor is the lessor or the sublessor, whether existing on the date hereof or hereafter entered into, together with any changes, extensions, revisions or modifications thereof and all rights, powers, privileges, options and other benefits of Mortgagor as the lessor or sublessor under such Leases regarding the current tenants and any future tenants, and all the Rents from such Leases, including those now due, past due, or to become due.

 (b) Reserved.

 (c) Reserved.

 (d) Subject to the provisions of subsection (f) below, in the event an Event of Default shall occur and be continuing, the Mortgagor will execute and deliver to the Mortgagee any instruments the Mortgagee may from time to time request for the purpose of effectuating the assignment contained in this Section 3.1 and the payment to the Mortgagee of the Rents assigned.

 (e) Neither the foregoing assignment nor the exercise by the Mortgagee of any of its rights herein shall be deemed to make the Mortgagee a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Leases or the use, occupancy, enjoyment or operation of all or any portion thereof, unless and until the Mortgagee, in person or by agent, assumes actual possession thereof, nor shall appointment of a receiver for the Leases by any court at the request of the Mortgagee or by agreement with the Mortgagor or the entering into possession of the Leases or any part thereof by such receiver be deemed to make the Mortgagee a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Leases or the use, occupancy, enjoyment or operation of all or any portion thereof.

 (f) Notwithstanding anything to the contrary contained herein, so long as no Event of Default shall have occurred and be continuing, the Mortgagor shall have the right to collect all revenues and Rents attributable to the Leases (including any and all checks and drafts relating thereto) and to retain, use and enjoy same.

 (g) Subject to the provisions of Section 3.1(f) above, in the event an Event of Default shall occur and be continuing, the Mortgagee may endorse and cash any and all checks and drafts payable to the order of the Mortgagor or the Mortgagee for the account of the Mortgagor, received from or in connection with the proceeds of the Leases affected hereby, and the same may be applied as provided herein.

 (h) Subject to the provisions of Section 3.1(f) above, in the event an Event of Default shall occur and be continuing, the Mortgagee shall have the right at the Mortgagee's

-10-



7/30/2015 1:34 PM
Page:11 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

election and in the name of the Mortgagor, or otherwise, to prosecute and defend any and all actions or legal proceedings deemed advisable by the Mortgagee in order to collect such Rents and to protect the interests of the Mortgagee or the Mortgagor in the Collateral, with all costs, expenses and attorneys fees incurred in connection therewith being paid by the Mortgagor.

(i)       Without in any way limiting the effectiveness of the foregoing provisions, if the Mortgagor receives any Rents or other proceeds which under this Section 3.1 are payable to the Mortgagee, the Mortgagor shall hold the same in trust and remit such Rents or other proceeds, or cause them to be remitted, immediately, to the Mortgagee.

3.2    **Application of Proceeds**.  All payments received by the Mortgagee pursuant to this Article III attributable to the interest of the Mortgagor in and to the Collateral shall be applied in the order set forth in Section 8.4 of the Credit Agreement.

3.3    **Mortgagor's Payment Duties**.   Except as provided in Section 7.16 hereof, nothing contained herein will limit the Mortgagor's absolute duty to make payment of the Obligations regardless of whether the proceeds assigned by this Article III are sufficient to pay the same, and the receipt by the Mortgagee of proceeds from Collateral under this Mortgage will be in addition to all other security now or hereafter existing to secure payment of the Obligations.

3.4    **Liability of the Mortgagee**.  The Mortgagee is hereby absolved from all liability for failure to enforce collection of any of such Rents, and from all other responsibility in connection therewith except the responsibility to account to the Mortgagor for Rents actually received by the Mortgagee.

3.5    **Actions to Effect Assignment**.  Subject to the provisions of Section 3.1(f), the Mortgagor covenants to cause all operators, pipeline companies, production purchasers and other remitters of said Rents or proceeds to pay promptly to the Mortgagee the Rents or proceeds from such Leases in accordance with the terms of this Mortgage, and to execute, acknowledge and deliver to said remitters such certificates and other documents as may be necessary, requested or proper to effect the intent of the assignment contained in this Article III; and the Mortgagee shall not be required at any time, as a condition to its right to obtain the Rents or proceeds of such Leases, to warrant its title thereto or to make any guaranty whatsoever.  In addition, the Mortgagor covenants to provide to the Mortgagee, the name and address of every such remitter of Rents or proceeds from such Leases, together with a copy of the applicable sales contracts and governing instruments.  All expenses incurred by the Mortgagee in the collection of said Rents and proceeds shall be repaid promptly by the Mortgagor; and prior to such repayment, such expenses shall be a part of the Obligations secured hereby.  If under any existing Leases or Contracts any Rents or proceeds of Leases are required to be paid by the remitter directly to the Mortgagor so that under such existing Leases or Contracts payment cannot be made of such proceeds to the Mortgagee in the absence of foreclosure, the Mortgagor's interest in all Rents or proceeds of Leases under such existing Contracts shall, when received by the Mortgagor, constitute trust funds in the Mortgagor's hands for the benefit of the  Mortgagee and shall be immediately paid over to the Mortgagee.

7/30/2015 1:34 PM
Page:12 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00   User:SP

3.6    Power of Attorney. Without limitation upon any of the foregoing, the Mortgagor hereby designates and appoints the Mortgagee as true and lawful agent and attorney-in-fact (with full power of substitution, either generally or for such periods or purposes as the Mortgagee may from time to time prescribe), with full power and authority, for and on behalf of and in the name of the Mortgagor, to execute, acknowledge and deliver all such division orders, transfer orders, certificates and other documents of every nature, with such provisions as may from time to time, in the opinion of the Mortgagee, be necessary or proper to effect the intent and purpose of the assignment contained in this Article III; and the Mortgagor shall be bound thereby as fully and effectively as if the Mortgagor had personally executed, acknowledged and delivered any of the foregoing orders, certificates or documents. The powers and authorities herein conferred on the Mortgagee may be exercised by the Mortgagee through any Person who, at the time of exercise, is the president, a senior vice president or a vice president of the Mortgagee. **The power of attorney conferred by this Section 3.6 is granted for valuable consideration and coupled with an interest and is irrevocable so long as Security Termination has not occurred.** Any Person dealing with the Mortgagee, or any substitute, shall be fully protected in treating the powers and authorities conferred by this Section 3.6 as continuing in full force and effect until advised by the Mortgagee that Security Termination has occurred.

3.7    Indemnification. THE MORTGAGOR AGREES TO INDEMNIFY THE MORTGAGEE, AND THE OTHER LENDER PARTIES, AND EACH OF THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, AND AGENTS (COLLECTIVELY, THE "INDEMNIFIED PARTIES") FROM, AND DISCHARGE, RELEASE AND HOLD EACH OF THEM HARMLESS AGAINST ALL LOSSES, DAMAGES, CLAIMS, ACTIONS, LIABILITIES, JUDGMENTS, COSTS, ATTORNEYS FEES OR OTHER CHARGES OF WHATSOEVER KIND OR NATURE (HEREAFTER REFERRED TO AS "CLAIMS") MADE AGAINST, IMPOSED ON, INCURRED BY OR ASSERTED AGAINST ANY OF THEM IN ANY WAY RELATING TO OR ARISING OUT OF AN ASSERTION EITHER BEFORE OR AFTER THE PAYMENT IN FULL OF THE OBLIGATIONS THAT ANY OF THE INDEMNIFIED PARTIES RECEIVED COLLATERAL OR PROCEEDS PURSUANT TO THIS MORTGAGE OR PURSUANT TO ANY RIGHT TO COLLECT PROCEEDS DIRECTLY FROM ACCOUNT DEBTORS WHICH ARE CLAIMED BY THIRD PERSONS. THE INDEMNIFIED PARTIES WILL HAVE THE RIGHT TO EMPLOY ATTORNEYS AND TO DEFEND AGAINST ANY SUCH CLAIMS AND UNLESS FURNISHED WITH REASONABLE INDEMNITY, THE INDEMNIFIED PARTIES WILL HAVE THE RIGHT TO PAY OR COMPROMISE AND ADJUST ALL SUCH CLAIMS. THE MORTGAGOR WILL INDEMNIFY AND PAY TO THE INDEMNIFIED PARTIES ALL SUCH AMOUNTS AS MAY BE PAID IN RESPECT THEREOF, OR AS MAY BE SUCCESSFULLY ADJUDICATED AGAINST ANY OF THE INDEMNIFIED PARTIES. **THE INDEMNITY UNDER THIS SECTION BY MORTGAGOR SHALL APPLY TO CLAIMS ARISING OR INCURRED BY REASON OF ANY INDEMNIFIED PARTY'S OWN NEGLIGENCE, BUT SHALL NOT APPLY TO CLAIMS DETERMINED BY A COURT OF COMPETENT JURISDICTION BY FINAL AND NONAPPEALABLE JUDGMENT TO HAVE RESULTED FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE INDEMNIFIED PARTY OR INDEMNIFIED PARTIES BEING INDEMNIFIED.** THE LIABILITIES OF THE MORTGAGOR AS SET FORTH IN THIS SECTION 3.7 SHALL SURVIVE THE TERMINATION OF THIS MORTGAGE.

3.8    **Rights Granted in this Article III.** It is the specific intent of the parties hereto to fully comply with applicable law concerning Federal oil and gas leases. The parties hereto in good faith believe that a grant of an assignment of Rents and Leases in this Mortgage as security

7/30/2015 1:34 PM
Page:13 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

for the repayment of the Obligations is not a transfer of a payment out of production or similar interest (as used in 43 C.F.R. Subpart 3106) or the grant of an "interest" (as such term is defined and used in 43 C.F.R § 3000.0-5(l)) in Federal oil and gas leases to the Mortgagee or any Lender Party. In the event that the assignment of Rents and Leases or the exercise of the rights provided by this Article III is determined to grant such an "interest" in Federal oil and gas leases, then such grant shall be deemed to be made to, and shall inure to the benefit of, only those parties that may lawfully hold an interest in Federal oil and gas leases pursuant to the Mineral Leasing Act of 1920, 30 U.S.C. §§ 181 et seq. and the regulations promulgated thereunder, including 43 C.F.R. Subparts 3102 and 3106.

## ARTICLE IV

### The Mortgagor's Representations, Warranties and Covenants

4.1     **Payment of Obligations.**   The Mortgagor covenants that the Mortgagor shall timely pay and perform the Obligations secured by this Mortgage.

4.2     **Representations and Warranties**.   The Mortgagor represents and warrants as follows:

(a)     *Incorporation of Representations and Warranties from Credit Agreement.* The representations and warranties applicable to the Mortgagor and to its Properties contained in Article VI of the Credit Agreement are hereby confirmed and restated, each such representation and warranty, together with all related definitions and ancillary provisions, being hereby incorporated into this Mortgage by reference as though specifically set forth in this Section.

(b)     *Title to Collateral*.   The Mortgagor has good and defensible title to the Collateral free from all Liens, claims, security interests or other encumbrances except as permitted by the provisions of Section 4.4(i) below. The Land, Servitudes and other interests and rights in real property described in Exhibit A constitute all of the Lands and Servitudes necessary for the construction, ownership, maintenance, access to and operation of the Systems affected by this Mortgage and the description in Exhibit A hereto includes a complete and accurate description of all such properties, rights and interests in real property.

(c)     *Status of Leases and Contracts*.   All of the Contracts and obligations of the Mortgagor that relate to the Collateral are in full force and effect and constitute legal, valid and binding obligations of the Mortgagor other than to the extent the voidance of such Contract or obligation could not reasonably be expected to cause a Material Adverse Change, except as such enforceability may be limited by any applicable bankruptcy, insolvency, reorganization, moratorium, or similar law affecting creditors' rights generally and by general principles of equity. Neither the Mortgagor nor, to the knowledge of the Mortgagor, any other party to any Contract (i) is in breach of or default, or with the lapse of time or the giving of notice, or both, would be in breach or default, with respect to any obligations thereunder, whether express or implied, or (ii) has given or threatened to give notice of any default under or inquiry into any possible default under, or action to alter, terminate, rescind or procure a judicial reformation of, any Lease or any Contract, in any event, other than for such breaches or defaults which could not reasonably be expected to cause a Material Adverse Change.

7/30/2015 1:34 PM
Page:14 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

(d)     *Taxes, Expenses and Revenues*.  All rentals and other payments due under or with respect to the Lands have been properly and timely paid.  All taxes have been properly and timely paid except to the extent such taxes are being contested in good faith and for which reserves in accordance with GAAP have been made as reflected in the Financial Statements described in Section 6.5 of the Credit Agreement.  All expenses payable under the terms of the Contracts have been properly and timely paid except for such expenses being contested in good faith by appropriate proceedings, and for which reserves shall have been made therefor and except for such expenses as are being currently paid prior to delinquency in the ordinary course of business.

(e)     Reserved.

(f)     *Gas Regulatory Matters*.   The Mortgagor has filed with the appropriate state and federal agencies all necessary rate and collection filings and all necessary applications for well determinations under the Natural Gas Act of 1938, as amended, the Natural Gas Policy Act of 1978, as amended, and the rules and regulations of the Federal Energy Regulatory Commission (the "FERC") thereunder, and each such application has been approved by or is pending before the appropriate state or federal agency.

(g)     Reserved.

(h)     Reserved.

(i)     *Compliance With Laws*.  All Collateral has been constructed and operated in compliance, in all material respects, with all applicable federal, state and local laws and applicable rules and regulations of the federal, state and local regulatory authorities having jurisdiction thereof.

(j)     *Regulatory Filings and Compliance*.   All necessary and material regulatory filings have been properly made, and all regulatory (including Environmental) processes have been complied with in all material respects, in connection with the construction and operation of the Collateral, and the issuance of all rights of way and other surface uses necessary for the operations related thereto.

(k)     Reserved.

(l)     Reserved.

(m)     *The Mortgagor's Address*.   The address of the Mortgagor's place of business, residence, chief executive office and office where the Mortgagor keeps its records concerning accounts, contract rights and general intangibles is as set forth in Section 7.12, and there has been no change in the location of Mortgagor's place of business, residence, chief executive office and office where it keeps such records and no change of Mortgagor's name during the four months immediately preceding the Effective Date.  The Mortgagor hereby represents and warrants that its organizational number is 2006-000508135, the state of its formation is Wyoming and the correct spelling of its name is as set forth in its signature block below.

7/30/2015 1:34 PM
Page:15 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

4.3   **Further Assurances.**

(a)    The Mortgagor covenants that the Mortgagor shall execute and deliver such other and further instruments, and shall do such other and further acts as in the opinion of the Mortgagee may be necessary or desirable to carry out more effectively the purposes of this Mortgage, including without limiting the generality of the foregoing, (i) prompt correction of any defect in the execution or acknowledgment of this Mortgage, any written instrument comprising part or all of the Obligations, or any other document used in connection herewith; (ii) prompt correction of any defect which may hereafter be discovered in the title to the Collateral, which is reasonably capable of being corrected; and (iii) prompt payment when due and owing of all taxes, assessments and governmental charges imposed on this Mortgage, upon the interest of the Mortgagee, or upon the income and profits from any of the Collateral.

(b)    The Mortgagor covenants that the Mortgagor shall maintain and preserve the Lien and security interest herein created as a first lien (subject to Permitted Liens) so long as Security Termination has not occurred.

(c)    Mortgagor shall immediately notify Mortgagee of any discontinuance of or change in the address of Mortgagor's place of business, residence, chief executive office or office where it keeps records concerning accounts, contract rights and general intangibles.

4.4   **Operation of Collateral.** As long as Security Termination has not occurred, the Mortgagor shall (at the Mortgagor's own expense):

(a)    not enter into any operating agreement, contract or agreement which materially adversely affects the Collateral; provided that the foregoing shall not prohibit the Mortgagor from entering into operating agreements, contracts or agreements containing Liens permitted by Section 7.2.3 of the Credit Agreement;

(b)    do all things necessary and within the reasonable control of the Mortgagor to keep, or cause to be kept, in full force and effect the Collateral and the Mortgagor's interests therein, except as permitted by the Credit Agreement;

(c)    neither abandon, forfeit, surrender, release, sell, assign, sublease, farmout or convey, nor agree to sell, assign, sublease, farmout or convey, nor mortgage or grant security interests in, nor otherwise dispose of or encumber any of the Collateral or any interest therein, except as permitted by the Credit Agreement;

(d)    operate the Collateral in such a manner as to cause the Collateral to be operated in a good and workmanlike manner as a prudent operator would in accordance with (i) generally accepted practices, (ii) applicable Contracts, and (iii) all applicable Federal, state and local laws, rules and regulations;

(e)    promptly pay when due and owing (i) all expenses incurred in or arising from the operation of the Collateral, except for such expenses being contested in good faith by appropriate proceedings, and for which reserves shall have been made therefor and except for such expenses as are being currently paid prior to delinquency in the ordinary course of business; and (ii) all taxes, assessments and governmental charges imposed upon the Collateral, upon the

income and profits from any of the Collateral, upon the Mortgagee because of its interest therein or for which the Mortgagor may be liable, except to the extent such taxes are being contested in good faith and for which reserves in accordance with GAAP have been made as reflected in the financial statements delivered pursuant to the Credit Agreement; and indemnify the Mortgagee from all liability in connection with any of the foregoing (except to the extent of any liability determined by a court of competent jurisdiction by final and nonappealable judgment to have resulted from the gross negligence or willful misconduct of the Mortgagee);

(f)     promptly take all action reasonably necessary to enforce or secure the observance or performance of any material term, covenant, agreement or condition to be observed or performed by third parties under any Contract, or any part thereof, or to exercise any of its material rights, remedies, powers and privileges under any Contract, all in accordance with the respective terms thereof, except to the extent otherwise permitted under the Credit Agreement;

(g)     other than as otherwise permitted under the terms of the Credit Agreement, cause the Operating Equipment and the Fixture Operating Equipment to be kept in good and effective operating condition, ordinary wear and tear excepted, and cause to be made all repairs, renewals, replacements, additions and improvements thereof or thereto, necessary or appropriate in connection with the operation of the System;

(h)     permit and use reasonable commercial efforts to enable the Mortgagee (through any of its agents and employees) to enter upon the Lands during business hours and with reasonable prior notice for the purpose of investigating and inspecting the condition and operations of the Collateral in accordance with the terms of the Credit Agreement;

(i)     cause the Collateral to be kept free and clear of Liens of every character other than the Permitted Liens;

(j)     carry and maintain the insurance required by the Credit Agreement;

(k)     furnish to the Mortgagee, upon request, copies of any Contracts; and

(l)     timely and adequately perform all covenants express or implied in any Contract necessary to keep in full force and effect the Servitudes and to maintain the Mortgagor's interest therein, other than to the extent permitted under the Credit Agreement.

4.5     **Recording**.   The Mortgagor hereby authorizes the Mortgagee to, at the Mortgagor's own expense, record, register, deposit and file this Mortgage and every other instrument in addition or supplement hereto, including applicable financing statements, in such offices and places within the state where the Collateral is located and in the state where the Mortgagor is registered as a limited liability company or corporation (as applicable) and at such times and as often as may be necessary to preserve, protect and renew the Lien and security interest herein created as a first lien (subject to Permitted Liens) on real or personal property as the case may be, and otherwise shall do and perform all matters or things necessary or expedient to be done or observed by reason of any legal requirement for the purpose of effectively creating, perfecting, maintaining and preserving the Lien and security interest created hereby in and on the Collateral.

7/30/2015 1:34 PM
Page:17 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

4.6   **Records, Statements and Reports**. The Mortgagor shall keep proper books of record and account in which complete and correct entries shall be made of the Mortgagor's transactions in accordance with the method of accounting required in the Credit Agreement and shall furnish or cause to be furnished to the Mortgagee the reports required to be delivered pursuant to the terms of the Credit Agreement.

4.7   **Insurance**. The Mortgagor hereby assigns to the Mortgagee for its benefit and the benefit of the other Lender Parties any and all monies that may become payable under any such policies of insurance by reason of damage, loss or destruction of any of the Collateral and the Mortgagee may receive such monies and apply all or any part of the sums so collected, at its election, toward payment of the Obligations, whether or not such Obligations are then due and payable, in such manner as the Mortgagee may elect. Any insurance proceeds received by the Mortgagor shall be, unless otherwise notified by the Mortgagee, held in trust for the benefit of the Mortgagee, shall be segregated from other funds of the Mortgagor and shall be forthwith paid over to the Mortgagee.

4.8   **Covenants Running with the Land**. All covenants and agreements herein contained shall constitute covenants running with the Land.

## ARTICLE V

## Default

5.1   **Events of Default**. An Event of Default under the terms of the Credit Agreement shall constitute an "Event of Default" under this Mortgage.

5.2   **Acceleration Upon Default**. If an Event of Default (other than pursuant to Section 8.1.9 of the Credit Agreement) shall have occurred and be continuing, the Mortgagee may, or shall at the request of the Required Lenders, declare the entire unpaid principal of, and the interest accrued on, and all other amounts owed in connection with, the Obligations to be forthwith due and payable, whereupon the same shall become immediately due and payable without any protest, presentment, demand, notice of intent to accelerate, notice of acceleration or further notice of any kind, all of which are hereby expressly waived by the Mortgagor. If an Event of Default pursuant to Section 8.1.9 of the Credit Agreement shall have occurred and be continuing, the entire unpaid principal of and interest accrued on, and all other amounts owed in connection with, the Obligations, shall immediately and automatically become and be due and payable in full, without presentment, demand, protest or any notice of any kind (including, without limitation, any notice of intent to accelerate or notice of acceleration) all of which are hereby expressly waived by the Mortgagor. If an Event of Default shall have occurred and be continuing, whether or not the Mortgagee or the Required Lenders elect to accelerate as herein provided, the Mortgagee may simultaneously, or thereafter, without any further notice to the Mortgagor, exercise any other right or remedy provided in this Mortgage or otherwise existing under the Credit Agreement or any other Loan Document or any other agreement, document, or instrument evidencing obligations owing from the Mortgagor to any of the Lender Parties.

7/30/2015 1:34 PM
Page:18 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

## ARTICLE VI

### The Mortgagee's Rights

6.1   **Rights to Realty Collateral Upon Default.**

(a)   *Operation of Property by the Mortgagee*.  If an Event of Default shall have occurred and be continuing, in addition to all other rights of the Mortgagee, the Mortgagee shall have the following rights and powers (but no obligation):

(i)   To enter upon and take possession of any of the Realty Collateral and exclude the Mortgagor therefrom;

(ii)   To hold, use, administer, manage and operate the Realty Collateral to the extent that the Mortgagor could do so, and without any liability to the Mortgagor in connection with such operations;

(iii)   To the extent that the Mortgagor could do so, to make repairs, to purchase machinery and equipment, to conduct workover operations, to drill additional wells, and to exercise every power, right and privilege of the Mortgagor with respect to the Realty Collateral; and

(iv)   To collect Rents and application thereof to satisfy the Obligations.

The Mortgagee may designate any Person to act on its behalf in exercising the foregoing rights and powers.  When and if the expenses of such operation and development have been paid and Security Termination has occurred, the Realty Collateral shall be returned to the Mortgagor (provided there has been no foreclosure sale).

(b)   *Judicial Proceedings*.  If an Event of Default shall have occurred and be continuing, the Mortgagee, in lieu of or in addition to exercising the power of sale provided herein, may proceed by a suit or suits, in equity or at law (i) for the specific performance of any covenant or agreement herein contained or in aid of the execution of any power herein granted, (ii) for the appointment of a receiver whether there is then pending any foreclosure hereunder or the sale of the Realty Collateral, or (iii) for the enforcement of any other appropriate legal or equitable remedy; and further, in lieu of the non-judicial power of sale hereafter given for Collateral located in the State of Wyoming, the  Mortgagee may proceed for foreclosure or sale of the Collateral by judicial action.

(c)   *Foreclosure by Private Power of Sale of Collateral*.  If an Event of Default shall have occurred and be continuing, the Mortgagee shall have the right and power to sell, as the Mortgagee may elect, all or a portion of the Collateral at one or more sales as an entirety or in parcels, in accordance with the applicable laws of the State of Wyoming, as amended from time to time (or any successor provisions of Wyoming law governing real property foreclosure sales) or with any applicable state law of the state where any of the Collateral is located.   The Mortgagor hereby designates as the Mortgagor's address for the purpose of notice the address set forth in Section 7.12; provided that the Mortgagor may by written notice to the Mortgagee designate a different address for notice purposes.  Any purchaser

-18-

7/30/2015 1:34 PM
Page:19 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

or purchasers may be provided with a special warranty, subject to Permitted Liens, which conveyance shall be binding on the Mortgagor and the Mortgagor's successors and assigns. The Mortgagor hereby consents and agrees that, at the election of the Mortgagee, any disposition of all or part of the Realty Collateral may be made without warranty of any kind whether expressed or implied. Sale of a part of the Realty Collateral will not exhaust the power of sale, and sales may be made from time to time until all of the Realty Collateral is sold or all of the Obligations are paid in full. The Mortgagee may elect to foreclose this Mortgage by advertisement and sale, this grant being a power of sale, as provided by Wyoming Statutes, including, Wyo. Stat. Ann., § § 34-4-101 *et seq.*, as amended from time to time. Any sale of Collateral conducted pursuant to this Mortgage shall take place at such place or places and otherwise in such manner and upon such notices as may be required by law; or, in the absence of such requirement, as the Mortgagee may deem appropriate.

(d)     *Certain Aspects of Sale.* The Mortgagee will have the right to become the purchaser at any foreclosure sale and to credit the then outstanding balance of the Obligations against the amount payable by the Mortgagee as purchaser at such sale. Statements of fact or other recitals contained in any conveyance to any purchaser or purchasers at any sale made hereunder will conclusively establish the occurrence of an Event of Default, any acceleration of the maturity of the Obligations, the advertisement and conduct of such sale in the manner provided herein, and the truth and accuracy of all other matters stated therein. The Mortgagor does hereby ratify and confirm all legal acts that the Mortgagee may do in carrying out the Mortgagee's duties and obligations under this Mortgage, and the Mortgagor hereby irrevocably appoints the Mortgagee to be the attorney-in-fact of the Mortgagor and in the name and on behalf of the Mortgagor to execute and deliver any deeds, transfers, conveyances, assignments, assurances and notices which the Mortgagor ought to execute and deliver and do and perform any and all such acts and things which the Mortgagor ought to do and perform under the covenants herein contained and generally to use the name of the Mortgagor in the exercise of all or any of the powers hereby conferred or conferred by law on the Mortgagee. Upon any sale, whether under the power of sale hereby given or by virtue of judicial proceedings, it shall not be necessary for the Mortgagee or any public officer acting under execution or by order of court, to have physically present or constructively in his possession any of the Collateral, and the Mortgagor hereby agrees to deliver to the purchaser or purchasers at such sale on the date of sale the Collateral purchased by such purchasers at such sale and if it should be impossible or impracticable to make actual delivery of such Collateral, then the title and right of possession to such Collateral shall pass to the purchaser or purchasers at such sale as completely as if the same had been actually present and delivered.

(e)     *Receipt to Purchaser.* Upon any sale made under the power of sale herein granted, the receipt of the Mortgagee will be sufficient discharge to the purchaser or purchasers at any sale for its purchase money, and such purchaser or purchasers, will not, after paying such purchase money and receiving such receipt of the Mortgagee, be obligated to see to the application of such purchase money or be responsible for any loss, misapplication or non-application thereof.

(f)     *Effect of Sale.* Any sale or sales of the Realty Collateral will operate to divest all right, title, interest, claim and demand whatsoever, either at law or in equity, of the Mortgagor in and to the Realty Collateral sold, and will be a perpetual bar, both at law and in

7/30/2015 1:34 PM
Page:20 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

equity, against the Mortgagor, the Mortgagor's successors or assigns, and against any and all Persons claiming or who shall thereafter claim all or any of the Realty Collateral sold by, through or under the Mortgagor, or the Mortgagor's successors or assigns. Nevertheless, if requested by the Mortgagee so to do, the Mortgagor shall join in the execution and delivery of all proper conveyances, assignments and transfers of the Property so sold. The purchaser or purchasers at the foreclosure sale will receive as incident to his, her, its or their own ownership, immediate possession of the Realty Collateral purchased and the Mortgagor agrees that if the Mortgagor retains possession of the Realty Collateral or any part thereof subsequent to such sale, the Mortgagor will be considered a tenant at sufferance of the purchaser or purchasers and will be subject to eviction and removal by any lawful means, with or without judicial intervention, and all damages by reason thereof are hereby expressly waived by the Mortgagor.

(g) *Application of Proceeds*. The proceeds of any sale of the Realty Collateral or any part thereof, whether under the power of sale herein granted and conferred or by virtue of judicial proceedings, shall be applied as required by applicable law, or in the absence of such requirement, at the option of the Mortgagee, either applied at the time of receipt or held by the Mortgagee in the Cash Collateral Account as additional Collateral, but in either case, applied as required by applicable law, or in the absence of such requirement, applied in the order set forth in Section 8.4 of the Credit Agreement.

(h) *The Mortgagor's Waiver of Appraisement and Marshalling*. The Mortgagor agrees, to the full extent that the Mortgagor may lawfully so agree, that the Mortgagor will not at any time insist upon or plead or in any manner whatever claim the benefit of any appraisement, valuation, stay, extension or redemption law, now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Mortgage, the absolute sale of the Collateral, including the Realty Collateral, or the possession thereof by any purchaser at any sale made pursuant to this Mortgage or pursuant to the decree of any court of competent jurisdiction; and the Mortgagor, for the Mortgagor and all who may claim through or under the Mortgagor, hereby waives the benefit of all such laws and, to the extent that the Mortgagor may lawfully do so under any applicable law, any and all rights to have the Collateral, including the Realty Collateral, marshaled upon any foreclosure of the Lien hereof or sold in inverse order of alienation. To the extent permitted under applicable law, the Mortgagor agrees that the Collateral, including the Realty Collateral, may be sold in part, in parcels or as an entirety as directed by the Mortgagee.

6.2     **Rights to Personalty Collateral Upon Default**. If an Event of Default shall have occurred and be continuing, the Mortgagee may proceed against the Personalty Collateral in accordance with the rights and remedies granted herein with respect to the Realty Collateral, and in addition, will have all rights and remedies granted by the Uniform Commercial Code as in effect in Wyoming and this Mortgage. The Mortgagee shall have the right to take possession of the Personalty Collateral, and for this purpose the Mortgagee may enter upon any premises on which any or all of the Personalty Collateral is situated and, to the extent that the Mortgagor could do so, take possession of and operate the Personalty Collateral or remove it therefrom. The Mortgagee may require the Mortgagor to assemble the Personalty Collateral and make it available to the Mortgagee at a place to be designated by the Mortgagee which is reasonably convenient to both parties. Unless the Personalty Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the Mortgagee will

7/30/2015 1:34 PM
Page:21 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

send the Mortgagor reasonable notice of the time and place of any public sale or of the time after which any private sale or other disposition of the Personalty Collateral is to be made. This requirement of sending reasonable notice will be met if such notice is mailed, postage prepaid, to the Mortgagor at the address designated in Section 7.12 hereof (or such other address as has been designated as provided herein) at least ten days before the time of the sale or disposition. In addition to the expenses of retaking, holding, preparing for sale, selling and the like, the Mortgagee will be entitled to recover attorney's fees and legal expenses as provided for in this Mortgage and in the writings evidencing the Obligations before applying the balance of the proceeds from the sale or other disposition toward satisfaction of the Obligations. The Mortgagor will remain liable for any deficiency remaining after the sale or other disposition. The Mortgagor hereby consents and agrees that any disposition of all or a part of the Collateral may be made without warranty of any kind whether expressed or implied.

6.3   **Rights to Fixture Collateral Upon Default**. If an Event of Default shall have occurred and be continuing, the Mortgagee may elect to treat the Fixture Collateral as either Realty Collateral or as Personalty Collateral (but not both) and proceed to exercise such rights as apply to the type of Collateral selected.

6.4   **Account Debtors**. The Mortgagee may, in its discretion, if an Event of Default shall have occurred and be continuing, (a) notify any account debtor on any accounts constituting Collateral to make payments directly to the Mortgagee, and (b) contact such account debtors and other parties directly to verify information furnished by the Mortgagor with respect to such account debtors and such accounts. The Mortgagee shall not have any obligation to preserve any rights against prior parties.

6.5   **Costs and Expenses**. All sums advanced or costs or expenses incurred by the Mortgagee (either by it directly or on its behalf by any receiver appointed hereunder) in protecting and enforcing its rights hereunder shall constitute a demand obligation owing by the Mortgagor to the Mortgagee as part of the Obligations and may be included as part of the amount owing from the Mortgagor to the Mortgagee at any foreclosure sale. The Mortgagor hereby agrees to repay such sums on demand plus interest thereon from the date of the advance or incurrence until reimbursement of the Mortgagee at the Reimbursement Rate.

6.6   **Set-Off**. If an Event of Default shall have occurred and be continuing, any Lender Party shall have the right to set-off any funds of the Mortgagor in the possession of such Lender Party against any amounts then due by the Mortgagor pursuant to this Mortgage.

6.7   **Federal and Tribal Transfers**. Upon a sale conducted pursuant to this Article VI of all or any portion of the Realty Collateral consisting of interests (the "Federal and Tribal Interests") in leases, easements, rights-of-way, agreements or other documents and instruments covering, affecting or otherwise relating to federal or tribal lands (including, without limitation, leases, easements and rights-of-way issued by the Bureau of Land Management; leases, easements and rights-of-way issued by the Bureau of Indian Affairs; and leases, easements, rights-of-way and minerals agreements with tribal governments or agencies or allottees), the Mortgagor agrees to take all action and execute all instruments necessary or advisable to transfer the Federal and Tribal Interests to the purchaser at such sale, including without limitation, to execute, acknowledge and deliver assignments of the Federal and Tribal Interests on officially

-21-

7/30/2015 1:34 PM
Page:22 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

approved forms in sufficient counterparts to satisfy applicable statutory and regulatory requirements, to seek and request approval thereof and to take all other action necessary or advisable in connection therewith. **The Mortgagor hereby irrevocably appoints the Mortgagee as the Mortgagor's attorney-in-fact and proxy, with full power and authority in the place and stead of the Mortgagor,** in the name of the Mortgagor or otherwise, to take any such action and to execute any such instruments on behalf of the Mortgagor that the Mortgagee may deem necessary or advisable to so transfer the Federal and Tribal Interests, including without limitation, the power and authority to execute, acknowledge and deliver such assignments, to seek and request approval thereof and to take all other action deemed necessary or advisable by Mortgagee in connection therewith; and the Mortgagor hereby adopts, ratifies and confirms all such actions and instruments. **Such power of attorney and proxy is coupled with an interest, shall survive the dissolution, termination, reorganization or other incapacity of the Mortgagor and shall be irrevocable.** No such action by the Mortgagee shall constitute acknowledgment of, or assumption of liabilities relating to, the Federal and Tribal Interests, and neither the Mortgagor nor any other party may claim that the Mortgagee is bound, directly or indirectly, by any such action.

6.8   <u>Limitations on Rights and Waivers</u>.   All rights, powers and remedies herein conferred shall be exercisable by the Mortgagee only to the extent not prohibited by applicable law; and all waivers and relinquishments of rights and similar matters shall be effective only to the extent such waivers or relinquishments are not prohibited by applicable law.

6.9   <u>Certain Remedies Related to Rents</u>.   After the occurrence and during the continuance of an Event of Default, the Mortgagee may by written notice to Mortgagor terminate Mortgagor's license to collect the Rents hereunder. Any Rents received by Mortgagor after such notice shall be held in trust for the benefit of the Mortgagee, segregated from the other funds of Mortgagor, and immediately paid over to the Mortgagee, with any necessary endorsement. Mortgagor irrevocably authorizes all parties obligated to pay Rents to accept any notice from the Mortgagee that Mortgagor's license to collect the Rents has been terminated and, following such notice, to follow the instructions of the Mortgagee and ignore the instructions of Mortgagor with respect to collecting the Rents, including instructions which direct the obligors to pay all amounts due directly to the Mortgagee. Upon such notification and at the expense of Mortgagor, the Mortgagee may enforce collection of any Rents, and adjust, settle, or compromise the amount or payment thereof.

## ARTICLE VII

### Miscellaneous

7.1   <u>Advances by the Mortgagee</u>.   Each and every covenant of the Mortgagor herein contained shall be performed and kept by the Mortgagor solely at the Mortgagor's expense. If the Mortgagor fails to perform or keep any of the covenants of whatsoever kind or nature contained in this Mortgage, the Mortgagee (either by it directly or on its behalf by any receiver appointed hereunder) may, but will not be obligated to, make advances to perform the same on the Mortgagor's behalf, and the Mortgagor hereby agrees to repay such sums and any attorneys' fees incurred in connection therewith on demand plus interest thereon from the date of the advance until reimbursement of the Mortgagee at the Reimbursement Rate. In addition, the

7/30/2015 1:34 PM
Page:23 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

Mortgagor hereby agrees to repay on demand any costs, expenses and attorney's fees incurred by the Mortgagee which are to be obligations of the Mortgagor pursuant to, or allowed by, the terms of this Mortgage, including such costs, expenses and attorney's fees incurred pursuant to Section 3.1(h), Section 6.5 or Section 7.2 hereof, plus interest thereon from the date of such demand by the Mortgagee until reimbursement of the Mortgagee at the Reimbursement Rate. Such amounts will be in addition to any sum of money which may, pursuant to the terms and conditions of the written instruments comprising part of the Obligations, be due and owing. No such advance will be deemed to relieve the Mortgagor from any default hereunder.

7.2    **Defense of Claims**.  The Mortgagor shall promptly notify the Mortgagee in writing of the commencement of any legal proceedings affecting the Mortgagor's title to the Collateral or the Mortgagee's Lien or security interest in the Collateral, or any part thereof, and shall take such action, employing attorneys reasonably acceptable to the Mortgagee, as may be reasonably necessary to preserve the Mortgagor's and the Mortgagee's rights affected thereby. If the Mortgagor fails or refuses to adequately or vigorously, in the sole judgment of the Mortgagee, defend the Mortgagor's or the Mortgagee's rights to the Collateral, the Mortgagee may take such action on behalf of and in the name of the Mortgagor and at the Mortgagor's expense. Moreover, the Mortgagee may take such independent action in connection therewith as it may in its discretion deem proper, including the right to employ independent counsel and to intervene in any suit affecting the Collateral. All costs, expenses and attorneys' fees incurred by the Mortgagee pursuant to this Section 7.2 or in connection with the defense by the Mortgagee of any claims, demands or litigation relating to the Mortgagor, the Collateral or the transactions contemplated in this Mortgage shall be paid by the Mortgagor on demand plus interest thereon from the date of the advance by the Mortgagee until reimbursement of the Mortgagee at the Reimbursement Rate.

7.3    **Termination**.  If Security Termination has occurred and the covenants herein contained are fully performed, then all of the Collateral will revert to the Mortgagor to the extent not otherwise transferred or sold as permitted under Legal Requirements or under this Mortgage and the entire estate, right, title and interest of the  Mortgagee will thereupon cease; and the Mortgagee in such case shall, upon the request of the Mortgagor and the payment by the Mortgagor of all attorneys' fees and other expenses, deliver to the Mortgagor proper instruments acknowledging satisfaction of this Mortgage and the termination of the liens and security interests created hereby.

7.4    **Renewals, Amendments and Other Security**.  Without notice or consent of the Mortgagor, renewals and extensions of the written instruments constituting part or all of the Obligations may be given at any time and amendments may be made to agreements relating to any part of such written instruments or the Collateral. The Mortgagee may take or hold other security from Persons other than the Mortgagor for the Obligations without notice to or consent of the Mortgagor. The acceptance of this Mortgage by the Mortgagee shall not waive or impair any other security the Mortgagee may have or hereafter acquire to secure the payment of the Obligations nor shall the taking of any such additional security waive or impair the Lien and security interests herein granted. The Mortgagee may resort first to such other security or any part thereof, or first to the security herein given or any part thereof, or from time to time to either or both, even to the partial or complete abandonment of either security, and such action will not be a waiver of any rights conferred by this Mortgage. This Mortgage may not be amended,

waived or modified except in a written instrument executed by both the Mortgagor and the Non-Federal Collateral Mortgagee, on behalf of itself and the Federal Collateral Mortgagee. Notwithstanding anything to the contrary in this Mortgage, the Non-Federal Collateral Mortgagee may execute any amendment, waiver, release or modification to this Mortgage on behalf of the Federal Collateral Mortgagee and the execution of such amendment, waiver, release or modification to this Mortgage on behalf of the Federal Collateral Mortgagee shall be binding on the Federal Collateral Mortgagee without the need for execution by such Federal Collateral Mortgagee.

7.5    **Security Agreement, Financing Statement and Fixture Filing**. This Mortgage will be deemed to be and may be enforced from time to time as an assignment, chattel mortgage, contract, deed of trust, financing statement, real estate mortgage, or security agreement, and from time to time as any one or more thereof if appropriate under applicable state law. **AS A FINANCING STATEMENT, THIS MORTGAGE IS INTENDED TO COVER ALL PERSONALTY COLLATERAL. THIS MORTGAGE SHALL BE EFFECTIVE AS A FINANCING STATEMENT FILED AS A FIXTURE FILING WITH RESPECT TO FIXTURE COLLATERAL INCLUDED WITHIN THE COLLATERAL.** This Mortgage shall be filed in the real estate records or other appropriate records of the county or counties in the state in which any part of the Realty Collateral and Fixture Collateral is located as well as the Uniform Commercial Code records of the Secretary of State or other appropriate office of the state in which any Collateral or the Mortgagor is located. At the Mortgagee's request, the Mortgagor shall deliver financing statements covering the Personalty Collateral and Fixture Collateral, which financing statements may be filed in the Uniform Commercial Code records or other appropriate office of the county or state in which any of the Collateral or Mortgagor is located or in any other location permitted or required to perfect the Mortgagee's security interest under the Uniform Commercial Code. In addition, the Mortgagor hereby irrevocably authorizes the Mortgagee and any affiliate, employee or agent thereof, at any time and from time to time, to file in any Uniform Commercial Code jurisdiction any financing statement or document and amendments thereto, without the signature of the Mortgagor where permitted by law, in order to perfect or maintain the perfection of any security interest granted under this Mortgage. A photographic or other reproduction of this Mortgage shall be sufficient as a financing statement.

This Mortgage shall be deemed to be a fixture financing statement within the meaning of the Wyoming Uniform Commercial Code, and is to be filed for record in the real property records of the counties identified on Exhibit A. For such purpose the following information is furnished:

(a)   Name and Address of Debtor                         See name and address of Mortgagor on page 1.

(b)   Type of organization and jurisdiction of           Wyoming limited liability company.
      organization of Debtor:

(c)   Name and Address of Secured Party:                 See name and address of Mortgagee on page 1.

7/30/2015 1:34 PM
Page:25 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

(d)  Description of the types (or items) of   Goods that are or are to become fixtures all as more
     property covered by this Financing      particularly described in the definition of Collateral.
     Statement:

(e)  Description of real estate              See Exhibit A attached hereto, to which collateral is
                                             attached or upon which it is located.

(f)  Record owner of real estate            Debtor, and, for any interests described as being
                                             unrecorded on Exhibit A attached hereto, the
                                             grantor described on Exhibit A.

7.6   **Unenforceable or Inapplicable Provisions**. If any term, covenant, condition or provision hereof is invalid, illegal or unenforceable in any respect, the other provisions hereof will remain in full force and effect and will be liberally construed in favor of the Mortgagee in order to carry out the provisions hereof.

7.7   **Rights Cumulative**. Each and every right, power and remedy herein given to the Mortgagee will be cumulative and not exclusive, and each and every right, power and remedy whether specifically herein given or otherwise existing may be exercised from time to time and as often and in such order as may be deemed expedient by the Mortgagee, as the case may be, and the exercise, or the beginning of the exercise, of any such right, power or remedy will not be deemed a waiver of the right to exercise, at the same time or thereafter, any other right, power or remedy. No delay or omission by the Mortgagee in the exercise of any right, power or remedy will impair any such right, power or remedy or operate as a waiver thereof or of any other right, power or remedy then or thereafter existing.

7.8   **Waiver by the Mortgagee**. Any and all covenants in this Mortgage may from time to time by instrument in writing by the Mortgagee (acting upon the direction of the Required Lenders) be waived to such extent and in such manner as the Mortgagee may desire, but no such waiver will ever affect or impair the Mortgagee's rights hereunder, except to the extent specifically stated in such written instrument.

7.9   **Terms**. The term "Mortgagor" as used in this Mortgage will be construed as singular or plural to correspond with the number of Persons executing this Mortgage as the Mortgagor. If more than one Person executes this Mortgage as the Mortgagor, his, her, its, or their duties and liabilities under this Mortgage will be joint and several. The terms "the Mortgagee" and "Mortgagor" as used in this Mortgage include the heirs, executors or administrators, successors, representatives, receiver, trustees and assigns of those parties. Unless the context otherwise requires, terms used in this Mortgage that are defined in the Uniform Commercial Code of Wyoming are used with the meanings therein defined.

7.10  **Counterparts**. This Mortgage may be executed in any number of counterparts, each of which will for all purposes be deemed to be an original, and all of which are identical except that, to facilitate recordation, in any particular counties counterpart portions of Exhibit A

7/30/2015 1:34 PM
Page:26 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

hereto which describe Properties situated in counties other than the counties in which such counterpart is to be recorded may have been omitted.

7.11   **Governing Law**.   This Mortgage shall be governed by and construed in accordance with the laws of the State of Wyoming.

7.12   **Notice**.   All notices required or permitted to be given by the Mortgagor or the Mortgagee shall be made in the manner set forth in the Credit Agreement and shall be addressed as follows:

> the Mortgagor:   Eastern Washakie Midstream LLC
> 1675 Broadway, Suite 2200
> Denver, Colorado 80202
> Attention: Adam Fenster
> Facsimile: 303-794-8451

> the Mortgagee:   Société Générale
> 1111 Bagby Street, Suite 2020
> Houston, Texas 77002
> Attention: Elena Robciuc
> Facsimile: 713-650-0824

7.13   **Condemnation**.   All awards and payments heretofore and hereafter made for the taking of or injury to the Collateral or any portion thereof whether such taking or injury be done under the power of eminent domain or otherwise, are hereby assigned, and shall be paid to the Mortgagee. The Mortgagee is hereby authorized to collect and receive the proceeds of such awards and payments and to give proper receipts and acquittances therefor. The Mortgagor hereby agrees to make, execute and deliver, upon request, any and all assignments and other instruments sufficient for the purpose of confirming this assignment of the awards and payments to the Mortgagee free and clear of any encumbrances of any kind or nature whatsoever. Any such award or payment may, at the option of the Mortgagee, be retained and applied by the Mortgagee after payment of attorneys' fees, costs and expenses incurred in connection with the collection of such award or payment toward payment of all or a portion of the Obligations, whether or not the Obligations are then due and payable, or be paid over wholly or in part to the Mortgagor for the purpose of altering, restoring or rebuilding any part of the Collateral which may have been altered, damaged or destroyed as a result of any such taking, or other injury to the Collateral.

7.14   **Successors and Assigns**.

> (a)   This Mortgage is binding upon the Mortgagor, the Mortgagor's successors and assigns, and shall inure to the benefit of and be binding upon, the Mortgagee and the other Lender Parties and each of their respective successors and assigns, and the provisions hereof shall likewise be covenants running with the land.

> (b)   Subject to clause (d) below, this Mortgage shall be transferable and negotiable, with the same force and effect and to the same extent as the Obligations may be

7/30/2015 1:34 PM
Page:27 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

transferable, it being understood that, upon the legal transfer or assignment by the Lender Parties (or any of them) of any of the Obligations, the legal holder of such Obligations shall have all of the rights granted to the Mortgagee for the benefit of the Lender Parties under this Mortgage. The Mortgagor specifically agrees that, to the extent permitted by applicable law, upon any transfer of all or any portion of the Obligations, this Mortgage shall secure with retroactive rank the existing Obligations of the Mortgagor to the transferee and any and all Obligations to such transferee thereafter arising.

(c). The Mortgagor hereby recognizes and agrees that the Lender Parties (or any of them) may, from time to time, one or more times, transfer all or any portion of the Obligations to one or more third parties. Such transfers may include, but are not limited to, sales of participation interests in such Obligations in favor of one or more third parties. Upon any transfer of all or any portion of the Obligations and subject to clause (d) below, the Mortgagee may transfer and deliver any and/or all of the Collateral to the transferee of such Obligations and such Collateral shall secure any and all of the Obligations in favor of such a transferee then existing and thereafter arising, and after any such transfer has taken place, the Mortgagee shall be fully discharged from any and all future liability and responsibility to the Mortgagor with respect to such Collateral, and transferee thereafter shall be vested with all the powers, rights and duties with respect to such Collateral.

(d) Notwithstanding anything to the contrary contained herein, including the provisions of clauses (b) and (c) above, when any Lender Party assigns or otherwise transfers any interest held by it under any Hedge Transaction to any other Person pursuant to the terms of such agreement, that other Person shall thereupon become vested with all the benefits held by such Lender Party under this Mortgage only if such Person also then qualifies as a Lender Party.

7.15 **Article and Section Headings**. The article and section headings in this Mortgage are inserted for convenience of reference and shall not be considered a part of this Mortgage or used in its interpretation.

7.16 **Usury Not Intended**. It is the intent of the Mortgagor and the Mortgagee in the execution and performance of this Mortgage, the Credit Agreement and the other Loan Documents to contract in strict compliance with applicable usury laws governing the Obligations including such applicable usury laws of the State of New York, the State of Wyoming, if any, and the United States of America as are from time-to-time in effect. In furtherance thereof, the Mortgagee and the Mortgagor stipulate and agree that none of the terms and provisions contained in this Mortgage, the Credit Agreement or the other Loan Documents shall ever be construed to create a contract to pay, as consideration for the use, forbearance or detention of money, interest at a rate in excess of the maximum non-usurious rate permitted by applicable law and that for purposes hereof "interest" shall include the aggregate of all charges which constitute interest under such laws that are contracted for, charged or received under this Mortgage, the Credit Agreement and the other Loan Documents; and in the event that, notwithstanding the foregoing, under any circumstances the aggregate amounts taken, reserved, charged, received or paid on the Obligations, include amounts which by applicable law are deemed interest which would exceed the maximum non-usurious rate permitted by applicable law, then such excess shall be deemed to be a mistake and the Mortgagee shall credit the same on the principal of the Obligations (or if the Obligations shall have been paid in full, refund said excess to the Mortgagor). In the event

7/30/2015 1:34 PM
Page:28 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

that the maturity of the Obligations is accelerated by reason of any election of the Mortgagee resulting from an Event of Default, or in the event of any required or permitted prepayment, then such consideration that constitutes interest may never include more than the maximum non-usurious rate permitted by applicable law and excess interest, if any, provided for in this Mortgage, the Credit Agreement or other Loan Documents shall be canceled automatically as of the date of such acceleration and prepayment and, if theretofore paid, shall be credited on the Obligations or, if the Obligations shall have been paid in full, refunded to the Mortgagor. In determining whether or not the interest paid or payable under any specific contingencies exceeds the maximum non-usurious rate permitted by applicable law, the Mortgagor and the Mortgagee shall to the maximum extent permitted under applicable law amortize, prorate, allocate and spread in equal part during the period of the full stated term of the Obligations, all amounts considered to be interest under applicable law of any kind contracted for, charged, received or reserved in connection with the Obligation.

7.17    **Credit Agreement**.  To the fullest extent possible, the terms and provisions of the Credit Agreement shall be read together with the terms and provisions of this Mortgage so that the terms and provisions of this Mortgage do not conflict with the terms and provisions of the Credit Agreement; provided, however, notwithstanding the foregoing, in the event that any of the terms or provisions of this Mortgage conflict with any terms or provisions of the Credit Agreement, the terms or provisions of the Credit Agreement shall govern and control for all purposes; provided that the inclusion in this Mortgage of terms and provisions, supplemental rights or remedies in favor of the  Mortgagee not addressed in the Credit Agreement shall not be deemed to be a conflict with the Credit Agreement and all such additional terms, provisions, supplemental rights or remedies contained herein shall be given full force and effect.

7.18  .  **Due Authorization**.  The Mortgagor hereby represents, warrants and covenants to the Mortgagee that (a) the obligations of the Mortgagor under this Mortgage are the valid, binding and legally enforceable obligations of the Mortgagor, except as such enforceability may be limited by any applicable bankruptcy, insolvency, reorganization, moratorium, or similar law affecting creditors' rights generally and by general principles of equity, (b) the execution, ensealing and delivery of this Mortgage by the Mortgagor has been duly and validly authorized in all respects by the Mortgagor, and (c) the persons who are executing and delivering this Mortgage on behalf of the Mortgagor have full power, authority and legal right to so do, and to observe and perform all of the terms and conditions of this Mortgage on the Mortgagor's part to be observed or performed.

7.19    **No Offsets, Etc**.  The Mortgagor hereby represents, warrants and covenants to the Mortgagee that there are no offsets, counterclaims or defenses at law or in equity against this Mortgage or the indebtedness secured hereby.

7.20    **DEFICIENCY JUDGMENT**.  THE MORTGAGEE HAS THE RIGHT TO PROCEED TO OBTAIN AND COLLECT DEFICIENCY JUDGMENT, TOGETHER WITH FORECLOSURE OF THE COLLATERAL TO THE EXTENT AVAILABLE UNDER APPLICABLE WYOMING LAW.

7.21    **Effectiveness**.  This Mortgage shall become effective upon its execution and delivery by the Mortgagor.

7/30/2015 1:34 PM
Page:29 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

THIS WRITTEN AGREEMENT AND THE LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT AMONG THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS AMONG THE PARTIES.

[Remainder of this page intentionally left blank.]

-29-

7/30/2015 1:34 PM
Page:30 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

EXECUTED AND DELIVERED effective as of the date first written above.

MORTGAGOR:

EASTERN WASHAKIE MIDSTREAM LLC

By:
Name:  Adam Fenster
Title:  Chief Financial Officer


THE STATE OF COLORADO          §
                               §
COUNTY OF Denver               §

This instrument was acknowledged before me on this 21ˢᵗ day of July, 2015, by Adam Fenster, as Chief Financial Officer of Eastern Washakie Midstream LLC, a Wyoming limited liability company, on behalf of said limited liability company.

CHRISTA MORRIS
Notary Public
State of Colorado
Notary ID 20144014911
My Commission Expires Apr 4, 2018

Notary Public in and for
the State of Colorado

Signature Page to Mortgage

7/30/2015 1:34 PM
Page:31 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

MORTGAGEE:

SOCIÉTÉ GÉNÉRALE, as Administrative Agent for the
ratable benefit of the Lender Parties

By:_____
Name:  Max Sonnonstine
Title:  Director


THE STATE OF TEXAS         §
                           §
COUNTY OF HARRIS           §

    This instrument was acknowledged before me on this 27th day of July, 2015, by Max Sonnonstine as Director of Société Générale, a French bank, on behalf of said bank.

_____
Notary Public in and for
the State of Texas

BLANCA ADRIANA DE LA GARZA
My Commission Expires
January 22, 2019

7/30/2015 1:34 PM
Page:32 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

SOCIÉTÉ GÉNÉRALE FINANCIAL CORPORATION,
as Collateral Agent for the Administrative Agent

By: _____
Name: Powell Robinson
Title: President

STATE OF NEW YORK        §
                         §
COUNTY OF NEW YORK       §

The foregoing instrument was acknowledged before me on this 22nd day of July, 2015, by Powell Robinson, as President of Société Générale Financial Corporation, a Delaware corporation, on behalf of said corporation.

_____
Notary Public in and for
the State of New York

Commission Number:

Commission Expires:

JOHN B. MACLAY III
Notary Public - State of New York
No. 02MA6120503
Qualified In New York County
My Commission Expires Dec. 20, 2016



7/30/2015 1:34 PM
Page:33 of 33
0960281 Bk:1274 Pg:142 Carbon WY Fees:$133.00 User:SP

EXHIBIT A
TO

## MORTGAGE, SECURITY AGREEMENT, FINANCING STATEMENT, FIXTURE FILING AND ASSIGNMENT OF RENTS AND LEASES

**Eastern Washakie Pipeline – Carbon County**

### T16N, R92W, 6th PM
Section 1: Lots 12-14, 19, 20, E2SW, SWSE
Section 12: W2NE, E2NW, NWSE

### T17N, R92W, 6th PM
Section 1: Lying within the W2, a Right of Way as described in that certain Pipeline Easement Agreement dated 9/5/2005 and recorded in Book 1124 at Page 0009, Carbon County, WY.
Section 24: Lots 4, 5, 12, 13
Section 12: Lots 3-6, 11-14
Section 13: Lying within the W2, a Right of Way as described in that certain Pipeline Easement Agreement dated 9/5/2005 and recorded in Book 1124 at Page 0009, Carbon County, WY.
Section 24: Lots 4, 5, 12, 13
Section 25: Lying within the W2, a Right of Way as described in that certain Pipeline Easement Agreement dated 9/5/2005 and recorded in Book 1124 at Page 0007, Carbon County, WY.
Section 36: Lying within the E2W2, SWSE, a Right of Way as described in that certain State of Wyoming Grant of Easement, Easement No. 7258 dated 10/6/2005 and recorded in Book 1124 at Page 0008, Carbon County, WY.

### T18N, R92W, 6th PM
Section 12: W2SW
Section 13: Lying within the W2, a Right of Way as described in that certain Pipeline Easement Agreement dated 6/28/2000 and recorded in Book 993 at Page 0110, Carbon County, WY.
Section 24: W2
Section 36: Lying within the W2W2, a Right of Way as described in that certain State of Wyoming Grant of Easement, Easement No. 7258 dated 10/6/2005 and recorded in Book 1124 at Page 0008, Carbon County, WY.

[End of Exhibit A]

35