# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In Re: ) | |
| ) | Case No. 15-22395-TBM |
| ESCALERA RESOURCES CO., ) | Chapter 11 |
| ) | |
| EIN: 83-0214692 ) | |
| ) | |
| Debtor. ) | |

## MOTION FOR ORDER APPROVING THE SALE OF DEBTOR'S MARIANNE FIELD ASSETS

Escalera Resources Co. ("Debtor"), as the debtor and debtor-in-possession, pursuant to 11 U.S.C. § 363(b) and (m), Rules 2002, 6004 and 9014 of the Fed. R. of Bankr. P. and Local Bankruptcy Rule 6004-1, files this motion (this "Motion") seeking approval of the sale of its Marianne Field Assets, as follows:

### Preliminary Statement

Debtor is seeking to sell its small working interests in certain oil and gas wells and leases located in Wyoming and described below as the "Marianne Field Assets." The Marianne Field Assets are not included in the potential sale of Debtor's coal bed methane ("CBM") Atlantic Rim assets.

### Background

1. On November 5, 2015 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"). Debtor continues to operate its business as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

2. On November 13, 2015, the United States Trustee appointed an Official Unsecured Creditors Committee (the "Committee").

3.  The Committee filed a motion to appoint a chapter 11 trustee on October 16, 2016. Debtor filed a response, and the parties informally agreed to put the matter on hold while Debtor obtained and hired an investment banker to conduct a sale process and file a new Plan.

4.  On January 3, 2018, the U.S. Trustee filed its Motion to Dismiss or Convert Chapter 11 Case Pursuant to U.S.C. § 1112(b) (the "UST Conversion Motion"). [Docket No. 531, 532] A hearing on the UST Conversion Motion is set for February 23, 2018.

5.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. This matter is a core proceeding pursuant to 28 U.S.C. §157(b), and the Court may enter a final order consistent with Article III of the United States Constitution.

6.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.  The bases for the relief requested herein are Bankruptcy Code §§ 105(a), 363(b) and 363(m), and Bankruptcy Rules 2002(a)(2), 2002(c)(1), 6004(a), 6004(f) and 6004(h).

## Proposed Sale

**A.  The Marianne Field Assets**

8.  The Marianne Field Assets are located in Sweetwater County, Wyoming, as described in Exhibits A through A-2 of the hereinafter described PSA (collectively, the "Properties")[1], and consist of Debtor's interests in and to the following:

(a)  those certain Leases[2], which term includes various oil and gas leases, working interests, units and participating areas located in or on the Properties;

(b)  all oil, gas, water and injection wells located in or upon the Properties;

(c)  any currently existing pools or units which include any Lands, all or part of any Leases or any Wells including those pools or units shown on Exhibit A-2 to the PSA;

---

[1] The legal descriptions of the Properties are contained in Exhibits A through A-2 to the PSA.
[2] All capitalized terms not defined in this Motion shall be the meaning set forth in the PSA.

(d) all Hydrocarbons produced from or attributable to the Leases, Lands and Wells from and after the Effective Time; and

(e) Records associated with the foregoing.

These assets are more fully described in Section 1.2 of the PSA. They do not make up a material portion of the assets, business or operations of Debtor.

**B. Marketing**

9. In late 2016, Debtor engaged and as approved by Court order [Dkt. #407], Debtor retained Seaport Global Securities LLC ("Seaport Global"), an experienced investment banking and financial firm, to market and sell substantially all of its assets via a stalking horse bidder and auction. These assets are primarily CBM assets located in a portion of Wyoming referred to as the Atlantic Rim. However, Debtor also owns interests in other wells and properties outside the Atlantic Rim area, including the Marianne Field Assets, which were also included in the initial marketing process.

10. Last winter, Seaport Global conducted an exhaustive marketing process. Among other things, it distributed a market teaser to approximately 208 potentially interested parties as potential acquirers, equity investors, debt financiers and/or asset sale purchasers. Seaport also called and met with other potentially interested parties. Approximately fifteen (15) parties signed confidentiality agreements, and Seaport Global provided confidential information to these parties via a virtual data room. Debtor met with several interested parties. By March 1, 2017, three bids were received for substantially all of Debtor's assets.

11. During this process, several things became apparent. First, Warren Resources, Inc. (which, together with certain of its affiliates, are hereinafter referred to as "Warren"), which Debtor considered the most likely buyer of Debtor's properties, would not be a bidder. Second, some

prospective buyers indicated an interest in acquiring Warren's interests in the Spyglass Hill Unit (also in the Atlantic Rim), in effect as a condition to purchase of Debtor's properties.[3] However, little to no interest was expressed in Debtor's non-CBM assets.

12. Warren indicated an interest in selling its interest in the Spyglass Hill Unit. Accordingly, Debtor and Warren commenced discussions through Seaport Global about a joint sale effort. These discussions ultimately led to a Stipulation between Warren and Debtor dated April 14, 2017, which the Court approved by Order dated June 1, 2017 [Docket No. 462]. Among other things, the parties agreed to jointly market their Atlantic Rim properties.

13. The Debtor's non-CBM assets were not included in the joint sale process. Debtor and Seaport Global split these assets in several different packages, with the Marianne Field Assets being part of a larger package, and in July 2017 Seaport Global listed all of these packages for sale on the Petroleum Listing Service ("PLS").

14. The PLS lists, among other things, oil and gas assets for sale. This is a multiple listing service and is the largest single database for such assets in the United States, Canada and the international markets. There are over 2,000 active deals at any one time, and it is the largest buyer network in the world. No commissions are paid upon a sale. In addition to PLS's website, the listings are published in PLS's twenty U.S. Canadian and international industry reports. There are over 10,000 PLS subscribers. PETROLEUM LISTING SERVICE, https://www.plsx.com (last visited Nov. 29, 2017).

---

[3] This was not unanticipated. Debtor has long believed that the combination of the Atlantic Rim properties offers efficiencies in terms of size and operation that make a sale more attractive.

### C. Material Terms of PSA and Proposed Order

15. As a result of the PLS listing, on November 6, 2017, Debtor received an offer from Chaco Energy Company ("Chaco"), a private oil and gas corporation located in Denver, Colorado, to purchase the Marianne Field Assets. Chaco is the operator of all but one of the wells. No other offers were received. After negotiations, Debtor and Chaco entered into a Purchase and Sale Agreement executed January 16, 2018, but effective on July 1, 2017 (the "PSA"), subject to the Court approval. A copy of the PSA is attached hereto as **Exhibit A**.

16. Pursuant to L.B. R. 6004-1, the material terms of the PSA and the proposed order approving the sale (the "Sale Order") are as follows:

(a) <u>Purchase Price</u>. The purchase price for the Marianne Field Assets is $40,000, payable in full upon Closing (*PSA §§ 2.1, 9.3(a)*) and subject to certain adjustments. (*PSA §§ 2.2, 9.4*) The PSA does not require an earnest money deposit.

(b) <u>Excluded Assets</u>. Certain assets which may be associated with the Marianne Field Assets are excluded from the sale, as identified in the PSA. (*PSA § 1.3*)

(c) <u>Sale Free and Clear of Liens</u>. The Marianne Field Assets are being sold pursuant to § 363(b) and (f)(2), (3) and (5) of the Bankruptcy Code "as is, where is" without warranty of any kind, except as provided in the PSA (*PSA § 4.2*), and free and clear of all liens, claims and encumbrances (collectively, "Interests") except as set forth in the PSA, (*PSA § 3.2; Motion, ¶ 17; Proposed Sale Order ¶ 3*) with those Interests which are not Permitted Encumbrances (hereinafter defined) attaching to the net sale proceeds of the Marianne Field Assets. (*Motion, ¶¶ 18-23, 31, 32; Proposed Sale Order ¶ 3*)

(d) <u>Releases</u>. The PSA contains a "Limitation on Damages" clause, in which both Debtor and Chaco waive any and all claims either party may have against the other for punitive

damages, or their respective consequential or indirect damages in connection with the PSA and the transactions contemplated therein regardless of fault. This is a customary provision found in purchase and sale agreements and is for the benefit of both parties. (*PSA § 12.15*)

(e) <u>Private Sale</u>. The PSA does not contemplate an auction. As described in this Motion, (*Motion, ¶¶ 9-15, 28-32*) Debtor did attempt to sell the Marianne Field Assets as part of a sale of substantially all of its assets via a stalking horse bidder and auction, but there was little interest. There were extensive marketing efforts that did not produce any viable bids. Debtor then listed the Marianne Field Assets on the PLS in an attempt to generate interest, and eventually, after several months, received Chaco's offer.

(f) <u>Closing</u>. The Closing of the transaction must occur no later than fifteen (15) days after entry of the Sale Order. (*PSA § 9.1(a)*).

(g) <u>Use of Proceeds</u>. As requested later in this Motion, the proposed Sale Order includes a provision authorizing Debtor to pay the Prepetition Taxes (hereinafter defined) to the Sweetwater County, Wyoming Treasurer at Closing. Such payment will prevent the further accrual of interest at 18% per annum on such claim. (*Motion, ¶¶ 21-23; Proposed Sale Order, ¶ 3*) Debtor may also pay at Closing the Postpetition Taxes (hereinafter defined) which are accrued and payable, since they are administrative expenses which are to be paid in the ordinary course of business.

(h) <u>Good Faith Purchaser</u>. As requested later in this Motion (and as per the PSA), the proposed Sale Order contains a provision that Chaco is a good faith purchaser under § 363(m) of the Bankruptcy Code. (*PSA § 4.2; Motion, ¶¶ 37-39; Proposed Sale Order ¶ E*) The PSA was negotiated in good faith at arms' length, without collusion or fraud of any kind. Debtor is unaware of any connections between Chaco and Debtor or any other party involved in the sale process.

6

Debtor is unaware of any conduct by Chaco that would prevent the application of Section 363(m) of the Bankruptcy Code.

(i) <u>Relief from Bankruptcy Rule 6004(h) and 6006(d)</u>. As requested later in this Motion, the proposed Sale Order contains a provision that such order will become effective immediately upon entry pursuant to Bankruptcy Rules 6004(h) and 6006(d), rather than being stayed until the entry of 14 days after the entry of the Sale Order. (*Motion, ¶ 41; Proposed Sale Order ¶ 5*) While Section 9.1(a) of the PSA allows for a Closing fifteen days after entry of the Sale Order, the parties wish to close as quickly as possible and thus desire that the Sale Order be a final order.

The PSA contains more extensive detailed terms and conditions which are beyond the summary provided for in this Motion. Interested parties are urged to read the PSA for a complete description of the terms of the sale.

**D.  Liens, Claims and Encumbrances**

17. The Marianne Field Assets are being sold subject to the following liens, claims and encumbrances (called "Permitted Encumbrances" in the PSA):

(a) Royalties and overriding royalties, reversionary interests and other burdens;

(b) All leases, unit agreements, pooling agreements, operating agreements, Hydrocarbon production sales contracts, division orders and other contracts, agreements and instruments applicable to the Marianne Field Assets;

(c) Transfer Requirements applicable to the Marianne Field Assets;

(d) Liens for current Taxes or assessments not yet delinquent (or, if delinquent, (i) being contested in good faith by appropriate actions, or (ii) which will attach to the sale proceeds at Closing pursuant to the Sale Order);

(e) Materialman's, mechanic's, repairman's, employee's, contractor's, operator's and other similar liens or charges arising in the ordinary course of business for amounts not yet delinquent (including any amounts being withheld as provided by Law), or, if delinquent, (i) being contested in good faith by appropriate actions, or (ii) which will attach to the sale proceeds at closing pursuant to the Sale Order;

(f) Rights of reassignment arising upon final intention to abandon or release the Marianne Field Assets, or any of them;

(g) Easements, rights-of-way, servitudes, permits, surface leases and other rights in respect of surface operations;

(h) All rights reserved to or vested in any Governmental Body to control or regulate any of the Marianne Field Assets in any manner and all obligations and duties under all applicable Laws, or under any franchise, grant, license or permit issued by any such Governmental Body;

(i) Any encumbrance on or affecting the Marianne Field Assets which Chaco expressly assumes, bonds or pays at or prior to Closing or which Debtor discharges at or prior to Closing;

(j) Calls on Hydrocarbon production under existing Contracts;

(k) Any other liens, charges, encumbrances, defects or irregularities which do not, individually or in the aggregate, materially interfere with the use or ownership of the Marianne Field Assets subject thereto or affected thereby (as currently used or owned), which would be accepted by a reasonably prudent purchaser engaged in the business of owning and operating oil and gas properties; and

(l) Liens granted under applicable joint or unit operating agreements.

18. The following parties may have a claim in Interest in the Marianne Field Assets:

(a) Société Générale, as Administrative Agent for the senior secured lenders. Debtor is a party to a Credit Agreement dated as of August 29, 2014, with certain senior secured lenders, including Société Générale. As of the Petition Date, Debtor was indebted to such lenders for not less than: (i) $36,886,300.00 in aggregate principal amount; (ii) accrued and unpaid interest and fees of $389,640.83; and (iii) additional amounts claimed as owed under the credit facility. As of the Petition Date, the Credit Facility was collateralized by substantially all of Debtor's oil and gas producing properties and substantially all other assets.

(b) Sweetwater County, Wyoming Treasurer.

19. On December 2, 2015, the Court entered its *Final Order (A) Authorizing Postpetition Use of Cash Collateral; (B) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 507, Bankruptcy Rules 2002, 4001, and 9014; and (C) Granting Related Relief* (the "Final Cash Collateral Order"). [Dkt. No. 112] As described in the Final Cash Collateral Order, as security for the Adequate Protection Obligations (as defined therein), the senior secured lenders have a valid, binding, continuing, enforceable, fully-perfected perfected, non-voidable first priority lien and/or replacement lien on, and security interest in, among other things, all of Debtor's rights in tangible and intangible assets, including without limitation, all prepetition and postpetition assets of Debtor's estate, including any and all oil and gas properties, well and production, and all products and proceeds thereof, to the extent of the aggregate postpetition diminution in value of the Prepetition Collateral (as defined therein) in the form of, among other things, superpriority claims under section 507(b) and Adequate Protection Liens (as defined therein).

20. Société Générale, as Administrative Agent for the senior secured lenders, has consented to the sale.

21. The Sweetwater County, Wyoming Treasurer is owed prepetition taxes on the subject properties of $211.34 plus accrued interest for gross proceeds-*ad valorem* taxes due (the "Prepetition Taxes").

22. The Sweetwater County, Wyoming Treasurer is also owed postpetiton taxes on such properties totaling $165.11 (the "Postpetition Taxes").

23. Debtor seeks authority to pay the Prepetition Taxes at Closing. Such payment will prevent the further accrual of interest at 18% per annum on such claims.

24. Debtor is unaware of any other Interests encumbering the Marianne Field Assets.

E.   **Preferential Purchase Rights**

25.  Debtor is unaware of any holder of a Preferential Purchase Right that applies to the sale.

## Legal Authority

A.   **Legal Authority for Sale**

26. A debtor in possession has "ample discretion to administer the estate, including authority to conduct public or private sales of estate property." *In re Psychometric Sys, Inc.*, 367 B.R. 670, 674 (Bankr. D. Colo. 2007) (Brown, J.) (quoting *In re Bakilis*, 220 B.R. 525, 532 (E.D.N.Y. 1998)). Likewise, bankruptcy courts are given a great deal of discretion when deciding whether to authorize a sale of a debtor's assets outside of the ordinary course of business. *See In re Chateaugay Corp.,* 973 F.2d 141, 144 (2d Cir. 1992). A sale should be authorized if the debtor-in-possession demonstrates the proposed sale reflects sound business judgment. *See Committee of Equity Security Holders v. Lionel Corporation (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Castre*, Inc., 312 B.R. 426, 428 (Bankr. D. Colo. 2004); *see also*, *In re Thomson*

*McKinnon Secs., Inc.*, 120 B.R. 301, 307 (Bankr. S.D.N.Y. 1990); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 389-90 (6th Cir. 1986).

27. Courts consider the following factors in determining whether the debtor-in-possession has exercised proper business judgment: (1) any improper or bad motive; (2) whether the price is fair and the negotiations or bidding occurred at arm's length; and (3) the adequacy of the sale procedures. *In re Castre*, Inc., 312 B.R. at 428. As demonstrated below, Debtor has properly exercised its business judgment for the proposed sale.

28. Debtor retained Seaport Global, a highly experienced investment banking firm, to market all of its assets. The Marianne Field Assets were included in a larger package listed for sale on the PLS by Seaport Global.

29. Bankruptcy Rule 6004(f)(1) provides that a sale of property outside of the ordinary course of business may be by private sale or public auction. In this case, Debtor believes that a private sale of the Marianne Field Assets will yield the best price. The PLS is the largest single database of oil and gas properties for sale with global reach and with the largest buyer network in the world. The negotiated purchase price of $40,000 for the Marianne Field Assets is well within the market rate for a collection primarily of small working interests. Debtor further believes that if the Marianne Field Assets went to an auction, they would sell for less since the interests are so small.

30. Further, the negotiations occurred at arm's length. Debtor had no prior relationship with Chaco and Chaco is not an insider or affiliate of Debtor. There was no improper or bad motive.

31. Debtor, its senior secured lenders and Seaport Global are satisfied that all possible reasonable efforts have been made to maximize the value of all of Debtor's assets, and that the

scheme of splitting the non-CBM assets into separate packages for sale on the PLS represents an good method of obtaining the best price possible for such assets under the circumstances.

33. Based upon the foregoing, the potential sale of Debtor's Marianne Field Assets is in the best interests of Debtor, its estate, and its creditors, and is based upon sound, reasoned and informed business judgment warranting this Court's approval.

**B.      Legal Authority for Sale Free and Clear of Interests**

33. Debtor seeks to sell the Marianne Field Assets free and clear of Interests pursuant to Section 363(f) of the Bankruptcy Code (except for those Permitted Encumbrances specified in the PSA). Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of any Interest in such property if:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

34. Because § 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of anyone of its five requirements is sufficient to permit the sale of Debtor's assets "free and clear" of Interests. *Mich. Empl. Sec. Comm'n v. Wolverine Radio Co.* (*In re Wolverine Radio Co.*), 930 F.2d 1132, 1147 n.24 (6th Cir. 1991); see also *In re Kelstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002).

35. Société Générale, as administrative agent, and Sweetwater County, Wyoming Treasurer are the lienholders whose property rights are affected by the sale, both of whom have

been served with this Motion. Société Générale, as administrative agent, consents to the sale, with its lien to attach to the net proceeds. Thus, Debtor has satisfied the provisions of §363(f)(2) of the Bankruptcy Code.

36.     As to the lien of the Sweetwater County, Wyoming Treasurer, the sale is free and clear only of liens for taxes past due as of the Closing and not free and clear of liens for taxes not yet delinquent. The price at which the property is being sold is greater than the aggregate value of all liens of the County against the property, and the County could be compelled to accept a money satisfaction of its Interests. Thus, Debtor has satisfied the provisions of §363(f)(3) and (5), and its lien will attach to the sale proceeds.

**C.     Determination that Chaco is a Good Faith Purchaser**

37.     Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

38.     A good faith purchaser is one who purchases in "good faith" and for "value." *In re Bel Air Associates, Ltd.*, 706 F.2d 301, 305 n.12 (10th Cir. 1983); *In re Abbotts Dairies of Pennsylvania, Inc*. 788 F.2d 143, 147 (3rd Cir. 1986). To constitute a lack of good faith, a party's conduct in connection with the sale usually must amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders or the trustee." *In re Crowder*, 314 B.R. 445, 450 (B.A.P. 10th Cir. 2004).

39.     In this case, the PSA was negotiated in good faith at arms' length, without collusion or fraud of any kind. Debtor is unaware of any connections between Chaco and Debtor or any

other party involved in the sale process. Debtor is unaware of any conduct by Chaco that would prevent the application of Section 363(m) of the Bankruptcy Code. Debtor anticipates making the appropriate showing at a hearing that Chaco has acted in good faith and otherwise in accordance with the statutory standards.

### Notice

40. Debtor has served this Motion on (a) the Office of the United States Trustee; (b) the Committee's counsel; (c) all parties who are known to assert liens with respect to the Marianne Field Assets and all other secured creditors; (d) all parties who have filed an entry of appearance and request for all notices; and (e) all operators of the subject lands, listed in Exhibit A-1 to the PSA.[4]

### Immediate Effect

41. Debtor requests that the order approving this Motion become effective immediately upon entry pursuant to Bankruptcy Rules 6004(h).

**WHEREFORE,** Debtor respectfully prays this Court to enter its order: (i) granting this Motion and approving Debtor's sale as set forth in the PSA; and (ii) granting such further relief as is just and proper.

Dated: February 1, 2018.	Respectfully submitted,

**Onsager | Fletcher | Johnson, LLC**

*s/ Alice A. White*
Christian C. Onsager, CBN 6889
Alice A. White, CBN 14537
1801 Broadway, Suite 900
Denver, Colorado 80202
Ph: (303) 512-1123
Fax: (303) 512-1129
consager@OFJlaw.com
awhite@OFJlaw.com

---

[4] Since Debtor holds a small working interest in the Leases, Debtor avows that notice to the operators of the wells is sufficient.